**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| Intellectual Ventures II LLC,<br><br>            *Plaintiff*,<br><br>      v.<br><br>BITCO General Insurance Corp., f/k/a,<br>Bituminous Casualty Corp.; and<br>BITCO National Insurance Co., f/k/a<br>Bituminous Fire and Marine Insurance Co.,<br><br>            *Defendants*. | Case No. 6:18-cv-00298-JRG<br><br>LEAD CASE |
| Intellectual Ventures II LLC,<br><br>            *Plaintiff*,<br><br>      v.<br><br>Great West Casualty Company,<br><br>            *Defendant*. | Case No. 6:18-cv-00299-JRG |

**DEFENDANTS' FED. R. CIV. P. 12(C) MOTION FOR JUDGMENT ON THE**
**PLEADINGS THAT CLAIM 14 OF U.S. PATENT NO. 7,516,177 IS**
**PATENT-INELIGIBLE UNDER 35 U.S.C. § 101**

## TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................... 1

II.    STATEMENT OF THE ISSUES ..................................................................... 2

III.   PROCEDURAL BACKGROUND ................................................................... 2

IV.    THE '177 PATENT ..................................................................................... 4

V.     CLAIM CONSTRUCTION RELEVANT TO CLAIM 14 OF THE '177 PATENT ........ 7

       A.     District Court Claim Constructions ............................................. 7

       B.     IPR Claim Constructions ........................................................... 7

VI.    LEGAL STANDARDS ................................................................................. 9

       A.     Rule 12(c) Motion for Judgment on the Pleadings ................................. 9

       B.     Patent-Eligibility Under 35 U.S.C. § 101 ............................................. 9

VII.   ARGUMENT ............................................................................................ 10

       A.     *Alice* Step One: Claim 14 Is Directed to an Abstract Idea .................... 11

       B.     *Alice* Step Two: Claim 14 Lacks an Inventive Concept ...................... 14

VIII.  CONCLUSION......................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)...................................................................15

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S.Ct. 2347 (2014)..................................................................... *passim*

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015)...................................................................10

*Automated Tracking Solns, LLC v. Coca-Cola Co.*,
  723 F. App'x 989 (Fed. Cir. 2018) ...........................................................5, 10, 15

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017).....................................................................8

*Bascom Global Internet Servs. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)...................................................................19

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)...................................................................15

*Berkheimer v. HP Inc.*,
  890 F.3d 1369 (Fed. Cir. 2018)...............................................................10, 15

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014).....................................................................9

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)...................................................................13

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016).............................................................11, 18, 19

*Enfish LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)...................................................................13

*Gonzalez v. Infostream Group, Inc.*,
  No. 2:14-cv-906-JRG, 2016 WL 1643313 (E.D. Tex. Apr. 26, 2016)..............14, 15

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015).............................................................13, 14, 17, 18

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)..................................................................................16

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
    850 F.3d 1315 (Fed. Cir. 2017)............................................................................12, 14

*Intellectual Ventures II LLC v. BITCO General Ins. Corp. et al.*,
    Nos. 17-1813, 17-2104, 17-2140 (Fed. Cir.) ........................................................4, 8

*Interval Licensing LLC v. AOL, Inc.*,
    No. 2016-2502, 2018 WL 3485608 (Fed. Cir. Jul. 20, 2018)...................7, 9, 17, 18

*Machete Prods., L.L.C. v. Page*,
    809 F.3d 281 (5th Cir. 2015) ....................................................................................9

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016)............................................................................17, 18

*Network Architecture Innovations LLC v. CC Network Inc.*,
    No. 16-cv-914-JRG, 2017 WL 1398276 (E.D. Tex. Apr. 18, 2017) .....................9, 14, 15, 16

*SAP Am., Inc. v. Investpic, LLC*,
    No. 2017-2081, slip op. (Fed. Cir. Aug. 2, 2018) .....................................................4

*In re TLI Commc'ns LLC Patent Lit.*,
    823 F.3d 607 (Fed. Cir. 2016)...........................................................................10, 12, 18

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)..................................................................................4

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)...........................................................................11, 16, 17, 19

*Uniloc USA, Inc. v. AVG Techs. USA, Inc.*,
    No. 16-cv-393-RWS, 2017 WL 1154927 (E.D. Tex. Mar. 28, 2017) ..............18, 19

**Statutes**

35 U.S.C. § 101 ............................................................................................................ *passim*

35 U.S.C. §§ 102 ...................................................................................................................3

35 U.S.C. §§ 102 and 103 ....................................................................................................4

**Other Authorities**

Local Rule CV-7(g) ...............................................................................................................1

## I.       INTRODUCTION

Claim 14 of U.S. Patent No. 7,516,177 ("the '177 patent," Dkt. 1-1)—the only asserted claim in this case—fails the two-step test for patent-eligibility set forth by the Supreme Court in *Alice Corporation Pty. Ltd. v. CLS Bank Int'l* because it (1) is directed to an abstract idea, and (2) contains no "inventive concept" that transforms the claim into patent-eligible matter.  Claim 14 is, therefore, ineligible for patenting under 35 U.S.C. § 101.

Under step one of the *Alice* test, the '177 patent purports to address the pre-computer and pre-Internet problem of keeping track of desired information among all available information and being able to find the desired information again.  Claim 14 allegedly solves that problem by allowing a user to choose desired content and develop a personal collection of content.  That idea, however, is abstract and an age-old practice that, as the '177 patent admits, existed prior to the advent of computers and the Internet.

Under step two of the *Alice* test, there is no "inventive concept" present in claim 14.  The claim merely implements the idea of developing a personal collection of online content using computer components and functionality that the '177 patent admits were routine and conventional.  Neither the '177 patent nor Plaintiff Intellectual Ventures II LLP's ("IV") First Amended Complaint for Patent Infringement (Dkt. 24) identifies any inventive technology for enabling a user to develop a personal collection of online content.

Accordingly, Defendants BITCO General Insurance Corp. and BITCO National Insurance Co. (collectively, "BITCO"), and Great West Casualty Company ("Great West") respectfully request that the Court grant this Motion on the basis that claim 14 of the '177 patent is patent-ineligible under § 101.  Pursuant to Local Rule CV-7(g), Defendants respectfully request oral argument on this Motion.

## II.     STATEMENT OF THE ISSUES

The sole issue presented to the Court in this Motion is whether claim 14 of the '177 patent is invalid under 35 U.S.C. § 101 for claiming patent-ineligible subject matter.

## III.    PROCEDURAL BACKGROUND

On January 20, 2015, IV filed lawsuits against BITCO (Case No. 6:15-cv-59-JRG) and Great West (Case No. 6:15-cv-60-JRG) alleging infringement of the '177 patent.  *See* Dkt. 1; 6:15-cv-60-JRG, Dkt. 1.  On April 9, 2015, IV amended its complaints in both cases adding allegations of infringement of U.S. Patent No. 8,929,555 ("the '555 patent").  *See* Dkt. 24; 6:15-cv-60-JRG, Dkt. 23.  The two cases were consolidated for pretrial purposes, with 6:15-cv-59-JRG the lead case.  *See* Dkt. 33.

The Court held a claim construction hearing on December 9, 2015 and issued a claim construction opinion on January 11, 2016 construing disputed terms in the '177 and '555 patents.[1]  *See* Dkt. 116.  Thereafter, on February 25, 2016, Defendants filed a Rule 12(c) Motion For Judgment On The Pleadings That The Remaining Asserted Claims of The Two Patents-In-Suit Claim Patent-Ineligible Abstract Ideas Under 35 U.S.C. § 101.  Dkt. 124.  Briefing was completed on April 11, 2016.

Meanwhile, on March 29, 2016, Defendants filed a motion to stay the district court proceedings in view of the Patent Trial and Appeal Board's ("PTAB") institution of *inter partes* review ("IPR") of all but one (*i.e.*, claim 14 of the '177 patent) of the asserted claims on petitions

---

[1] IV originally asserted claims 1-5 and 8-20 of the '177 patent and claims 1, 7, and 13-15 of the '555 patent. IV disclaimed claims 1-10 of the '177 patent during claim construction (Dkt. 103 at 1 n.1), and the Court held claims 1-6 and 13 of the '555 patent invalid as indefinite (Dkt. 116 at 53-55).

filed by Defendants in IPR2017-01706 and IPR2017-01707 ("BITCO IPRs").[2,3]  Dkt. 131.

Pursuant to the parties' stipulation, on May 11, 2016, the Court dismissed the parties' respective

claims regarding the '555 patent, leaving the '177 patent as the sole asserted patent.  Dkts. 143,

144.  The Court granted Defendants' motion to stay on May 12, 2016 without deciding

Defendants' Rule 12(c) Motion.  Dkt. 145.

On January 17, 2017, the PTAB entered final written decisions in the BITCO IPRs

finding that the challenged claims of the '177 patent are unpatentable over the asserted prior art.

That same day, in a separate proceeding, the PTAB instituted *inter partes* review on claims of

the '177 patent—including claim 14—in response to a petition filed by the defendants in another

patent lawsuit brought by IV.  *See Oracle Am., Inc. et al. v. Intellectual Ventures I LLC*,

IPR2016-01434 ("Oracle/HCC IPR"), Paper No. 13 (Dkt. 149-4).  In view of all of these factors,

the Court continued the stay pending the PTAB's final written decision in the Oracle/HCC IPR.

Dkt. 150.  The PTAB issued a final written decision in the Oracle/HCC IPR on January 8, 2018

finding all challenged claims of the '177 patent, except claim 14, unpatentable.[4]

---

[2] Defendants also filed a petition for covered business method ("CBM") review of claims 1-20 of the '177 patent asserting that the claims are unpatentable under § 101.  *See Great West Casualty Co. et al. v. Intellectual Ventures II LLC*, CBM2015-00171, Paper No. 1 (Ex. A) at 3. Thereafter, IV disclaimed claims 1-10 of the '177 patent.  *Id.*, Paper No. 10 (Ex. B) at 2.  The PTAB denied institution of remaining claims 11-20 of the '177 patent on the basis that Defendants failed to sufficiently show that the remaining challenged claims are finance-related— a pre-requisite showing required for CBM review.  *Id.* at 9.  The PTAB, therefore, did not consider—either at the institution stage or in a final written decision—the patentability of claims 11-20 under § 101.

[3] "Ex. __" refers to Exhibits attached to the Declaration of Sharon Lee filed concurrently with this Motion.

[4] The patentability of claim 14 is currently on appeal to the Federal Circuit.  *See, e.g.*, *Oracle Am., Inc. et al. v. Intellectual Ventures I LLC*, Nos. 18-1637, 18-1665 (Fed. Cir.) ("Oracle/HCC Appeal"), Dkt. 27 (Ex. C) at 8.  In any event, the PTAB's determination that claim 14 is patentable in view of the prior art presented in the IPRs under 35 U.S.C. §§ 102

On March 14, 2018, IV filed a motion with the Court seeking to lift the stay with respect to claim 14 and to continue the stay with respect to the remaining asserted claims of the '177 patent while those claims are on appeal.[5]  Dkt. 158.  On June 21, 2018, the Court granted IV's motion, lifted the stay as to claim 14, and severed the parties' claims pertaining to that claim from 6:15-cv-59 and 6:15-cv-60 into 6:18-cv-298 and 6:18-cv-299, respectively.  Dkt. 166.  The Court subsequently consolidated the severed proceedings and named 6:18-cv-298 the lead case. Dkt. 172.  On July 13, 2018, the Court denied Defendants' Rule 12(c) Motion without prejudice to refiling "in light of the new precedent from the Federal Circuit on § 101 and the recently lifted stay in this case."  Dkt. 173.

## IV.    THE '177 PATENT

The '177 patent is entitled "Apparatus for Distributing Content Objects to a Personalized Access Point of a User Over a Network-Based Environment and Method."  It purports to solve the problem of "users becom[ing] overwhelmed" by the amount of available information and

---

and/or 103 has no bearing on the patent eligibility of claim 14 under § 101.  *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1336, 1339-1340 (Fed. Cir. 2017) (affirming grant of Rule 12(c) motion and finding no error in district court's rejection of patentee's request that the court take judicial notice of other tribunals' evaluation of the novelty and nonobviousness of the claimed inventions because "[e]ligibility and novelty are separate inquiries.");  *SAP Am., Inc. v. Investpic, LLC*, No. 2017-2081, slip op. at 2-3 (Fed. Cir. Aug. 2, 2018) (not "enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art, passing muster under 35 U.S.C. §§ 102 and 103").

[5] In the BITCO IPRs, IV appealed the PTAB's determination that claims 11-13 and 15-20 of the '177 patent are unpatentable, and BITCO and Great West cross-appealed based on the PTAB's failure to issue a final written decision on claim 14.  *See, e.g.*, *Intellectual Ventures II LLC v. BITCO General Ins. Corp. et al.*, Nos. 17-1813, 17-2104, 17-2140 (Fed. Cir.) ("BITCO Appeal"), Dkt. 25 (Ex. D).  In the Oracle/HCC IPRs, Oracle and HCC appealed the PTAB's determination that claim 14 of the '177 patent is patentable over the presented prior art, and IV cross-appealed the PTAB's determination that claims 11-13 and 15-20 of the '177 patent are unpatentable.  *See, e.g.*, Oracle/HCC Appeal, Dkts. 12 (Ex. E), 16 (Ex. F).  The BITCO Appeal and Oracle/HCC Appeal have been coordinated as companion cases.  *See* BITCO Appeal, Dkt. 70 (Ex. G) at 2.

"either fail[ing] to find the information they seek or . . . los[ing] track of the information" and being unable to find it again at a later point in time.  '177 patent, 1:42-48.  The '177 patent solves that problem by purportedly "provid[ing] improvements in the way demand for information is identified, content is generated in response to defined demand, and the way in which users access desired information."  *Id.*, 2:23-26.

These "improvements" provide the user the ability to select content from various resources that distribute content and store that content or links to such content in a central location so that the user can access the selected content on demand.  '177 patent, 22:22-40.  The '177 patent proposes implementing these "improvements" using conventional computer components and functions.  *See Automated Tracking Solns, LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018) (relying on specification admissions that recited components were conventional in affirming grant of judgment on the pleadings on § 101).  For example, the '177 patent describes a "personalized access point" (*e.g.*, a personal web page) to which a user can add content objects or links to content objects selected from "distributed information access points" (*e.g.*, links within a web page, portion of a web page, a banner, a button, a clickable icon or graphic, a token placed on a product, sign or advertisement, networked cash register, bar code scanner) so that the user can keep all of their collected information in one place.  '177 patent, 6:65-7:2, 7:17-22, 8:19-30, 14:43-52.  A database on a server, which is merely one or more computers on the World Wide Web, stores "inter-related and/or non-related data including links [to content] that are stored together on a web server computer 115, and which can include individual web sites that are accessible by a user" via a "general purpose" client computer.  *Id.*, 10:19-25, 11:6-17, 11:22-31, Fig. 1.  The user accesses the selected content through their "personalized access point" using a client computer.  *Id.*, 8:27-28, 14:61-64.  The client and

server communicate using a generic communication medium or link, "such as an Integrated Services Digital Network (ISDN) telecommunications line, . . . a landline telephone line," "analog telephone line, or any other communication medium or communication link capable of interconnecting a client 110 with an online network 102." *Id.*, 11:66-12:16.

The '177 patent also describes an administrator's page, which is a software "graphical user interface" (*e.g.*, a web page) that allows the administrator to perform administrative functions, such as manage content categories. '177 patent, 8:38-47, 16:39-44, 34:61-35:4. In addition, a user can contribute content and manage their content (*e.g.*, a tutorial) "within a standard web browser using JavaScript capabilities." *Id.*, 46:54-55, 46:66-47:12, 47:27-30.

Claim 14 is directed specifically to the foregoing implementation of the '177 patent's purported solution. Claim 14, which depends on independent claim 11, is an "apparatus for distributing content" that includes (i) a database of content, (ii) a network resource that distributes content, (iii) a personalized access point that provides access to content selected by or for the user and allows a user to manage contributed content, and (iv) an administrative interface for grouping content:

> 11. An apparatus for distributing content through one or more distributed information access points to a centralized access point of a user, comprising:
>
> at least one server operative to store one or more of: a) content, b) links to content, c) information about content, and d) information about users including information about which content a user has chosen;
>
> a centralized access point of a user accessible via a communications link and operative to provide the user with access to content chosen by or for the user;
>
> at least one distributed information access point accessible via a communications link and operative to implement one or more of: a) list one or more content objects, b) allow a user to choose content for addition to their centralized access point, and c) provide the user with logon access to their centralized access point; and
>
> an administrative interface in communication with the server and operative to create groupings of content into one or more distributed information access points;

6

wherein a user is enabled with the capability to log on to their centralized access point from one or more distributed information access point(s) and access content chosen from one or more distributed information access point(s).

14.     The apparatus of claim 11 wherein the centralized access point is further operative to enable a user to manage any content contributed by them.

## V.     CLAIM CONSTRUCTION RELEVANT TO CLAIM 14 OF THE '177 PATENT

### A.     District Court Claim Constructions

Although Rule 12(c) motions on § 101 are typically resolved prior to claim construction proceedings, they may also be granted after claim terms have been construed.  *See Interval Licensing LLC v. AOL, Inc.*, No. 2016-2502, 2018 WL 3485608, at *8 (Fed. Cir. Jul. 20, 2018) (taking into consideration court's construction of claim term in affirming Rule 12(c) motion on § 101).  Here, the Court previously construed the following terms related to claim 14:

| Term | Court's Construction |
|---|---|
| "centralized access point of a user" | "a user's network resource that can be used to access content" |
| "distributed information access point" | "a network resource which is delivered to one or more users and that enables a user to interact with a centralized access point" |
| "administrative interface" | "a software management tool that facilities administrative functions" |

*See* Dkt. 116 at 20, 28.  Thus, Defendants apply the Court's claim constructions in analyzing claim 14.

### B.     IPR Claim Constructions

Although it did not ask this Court to construe "content," "access to content," or "content contributed," during the IPR proceedings IV made representations to the PTAB regarding the proper scope of those claim terms under the broadest reasonable interpretation ("BRI") standard applicable in IPRs:

| Claim Term | IV's IPR Assertions |
|---|---|
| "content" | "content" excludes "links to content," "information about content," and "information about users including information about which content a user has chosen"[6] |
| "access to content" | the presence of links to content is insufficient to confer "access to content"[7] |
| "content contributed" | "content provided so it is accessible by at least one user other than the contributor"[8] |

The proper broadest reasonable constructions of "content" and "content contributed" are currently on appeal to the Federal Circuit in the BITCO Appeal and Oracle/HCC Appeal.[9]

IV's statements during the IPR proceedings may ultimately be found to result in prosecution disclaimer to "ensure that claims are not argued one way in order to maintain patentability and in a different way against accused infringers," *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360, 1364 (Fed. Cir. 2017). It is not necessary for purposes of this Motion, however, to determine whether IV has disclaimed any claim scope because, as demonstrated

---

[6] *Great West Casualty Co. et al. v. Intellectual Ventures II LLC*, IPR2015-01706, Paper 28 (Dkt. 149-1) at 6, 16 n.5 (P.T.A.B. Jan. 17, 2017); *Great West Casualty Co. et al. v. Intellectual Ventures II LLC*, IPR2015-01707, Paper 30 (Dkt. 149-2) at 6, 16 n.5 (P.T.A.B. Jan. 17, 2017); *Oracle Am. Inc. et al. v. Intellectual Ventures I LLC*, IPR2016-01434, Paper 52 (Dkt. 157-1) at 6-7 (P.T.A.B. Jan. 8, 2018).

[7] *Great West Casualty Co.*, IPR2015-01706, Paper 28 (Dkt. 149-1) at 8.

[8] *Oracle Am., Inc.*, IPR2016-01434, Paper 52 (Dkt. 157-1) at 17-18.

[9] The PTAB construed "content" as excluding "links to content," but encompassing the visible portion (*e.g.*, text) of a "link to content." *Great West Casualty Co.*, IPR2015-01706, Paper 28 (Dkt. 149-1) at 16; *Great West Casualty Co.*, IPR2015-01707, Paper 30 (Dkt. 149-2) at 16; *Oracle Am., Inc.*, IPR2016-01434, Paper 52 (Dkt. 157-1) at 11. On appeal, IV disputes the PTAB's construction and urges that the proper construction of "content" under BRI excludes anything that could qualify as a "links to content." BITCO Appeal, Dkt. 34 (Ex. H) at 3-5. In the Oracle/HCC IPR, the PTAB construed "content contributed" as "content provided so it is accessible by at least one user other than the contributor." *Oracle Am., Inc.*, IPR2016-01434, Paper 52 (Dkt. 157-1) at 22. On appeal, the Petitioner disputes the PTAB's construction and urges that the proper construction of "content contributed" under BRI does not require the content to be "accessible by at least one user other than the contributor." Oracle/HCC Appeal, Dkt. 27 (Ex. C) at 24-26.

below, claim 14 is patent ineligible regardless of any applicable disclaimer.  *See Network Architecture Innovations LLC v. CC Network Inc.*, No. 16-cv-914-JRG, 2017 WL 1398276, at *3 (E.D. Tex. Apr. 18, 2017) (Gilstrap, J.) ("Where the basic character of the claimed subject matter in dispute is clearly evident to the Court, no further construction of the claims is required [to determine patent eligibility].") (internal quotations omitted).

## VI.   LEGAL STANDARDS

### A.   Rule 12(c) Motion for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed—but early enough not to delay trial."  A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).  In determining such motions, all well-pleaded facts in the complaint are accepted as true and viewed in the light most favorable to the non-movant.  *Id*.  Whether a claim recites patent-eligible subject matter under § 101 is properly resolved on a Rule 12(c) motion where there are no material disputed facts.  *See, e.g.*, *Interval Licensing*, 2018 WL 3485608 at *1, 4 n.4 (affirming grant of Rule 12(c) motion on § 101); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed. Cir. 2014) (same).  Although Rule 12(c) motions on § 101 are typically resolved prior to claim construction proceedings, they may also be granted after claim terms have been construed.  *See Interval Licensing*, 2018 WL 3485608 at *8 (taking into consideration court's construction of claim term in affirming Rule 12(c) motion on § 101).

### B.   Patent-Eligibility Under 35 U.S.C. § 101

The Supreme Court has held that to be patent-eligible under Section 101, a patent claim

must survive a two-part test.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2355 (2014).  The first step requires determining whether the patent claim is directed to a patent-ineligible concept, such as an abstract idea.  *Id.*  If so, the second step requires determining whether the elements of the claim individually, or as an ordered combination, contain an "inventive concept" that transforms the nature of the claim into a patent-eligible application.  *Id.*  "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.  Rather, the components must involve more than performance of '"well-understood, routine, conventional activit[ies]" previously known to the industry.'"  *In re TLI Commc'ns LLC Patent Lit.*, 823 F.3d 607, 613 (Fed. Cir. 2016).  Admissions in the patent specification that claim elements are well known, routine, and conventional are binding on the patentee and can be sufficient to demonstrate that claims lack patent eligibility.  *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1371 (Fed. Cir. 2018); *Automated Tracking Solns*, 723 F. App'x at 995.

While preemption concerns underlie § 101 jurisprudence, "questions on preemption are inherent in and resolved by the § 101 analysis."  *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, . . . preemption concerns are fully addressed and made moot.").

## VII.   ARGUMENT

Claim 14 of the '177 patent is invalid because it claims the abstract idea of developing and maintaining a personal collection of online content using only conventional computer components.

### A.     *Alice* Step One: Claim 14 Is Directed to an Abstract Idea

The first step of the *Alice* inquiry requires looking at the "focus" of the claim and its "character as a whole" to determine whether the claim is directed to an abstract idea.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal quotations omitted); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (holding claims directed to abstract idea where "the concept embodied by the majority of the limitations describes only the abstract idea").

Here, the "focus" of claim 14 is directed to the abstract idea of a personal collection of online content.  Claim 14 recites "[a]n apparatus for distributing content through one or more distributed information access points to a centralized access point of a user."  According to the '177 patent, the "content" (*e.g.*, user guides, tutorials, and other reading material) is distributed through "distributed information access points," which can be "a token placed on a product, product packaging, a sign or an advertisement," or a "viewer perceptible screen display[] on [a] client computer," such as a "web page."  '177 patent, 6:65-7:10, 14:43-52, 45:21-27.  The content that a user selects from such "distributed information access points" or a link to that content is then added to the user's "centralized access point" (*e.g.*, a personal webpage), which "keeps all of their collected information in one place."  '177 patent, 8:19-30; *see id.*, 7:17-22, 22:38-40.  As discussed above (*see supra* Section IV),  the limitations of claim 14 are directed to providing the user with the ability to select content from various sources and storing that content or links to that content in a central location (*e.g.*, personal web page) so that the user can access desired content through that central location.  Thus, the heart of claim 14 is distributing content to be added to a personal collection or library of online content.

The concept of developing a personal collection or library of content, however, is "an

age-old practice that existed well before the advent of computers and the Internet." *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017).  As the '177 patent admits, the "storage and retrieval of information has evolved from storing and retrieving information in textbooks and libraries, to storing and retrieving information from online networks such as the Internet."  '177 patent, 1:30-33.  The abstract idea claimed in claim 14 is no different from, for example, a consumer going to a retail music store (*e.g.*, Best Buy) or bookstore or library (*e.g.*, Barnes & Noble) and selecting desired content (*e.g.*, cassette tapes, CDs, books) to add to her personal collection.  The consumer can then keep that content in one place (*e.g.*, a bookshelf) to easily access the content when she desires.  As another example, the claimed abstract idea is comparable to a student going to a library and writing down in her notepad ("centralized access point") the call numbers ("links to content") of the books or references that she desires, so that she can efficiently access those resources.  Claim 14's "administrative interface . . . to create groupings of content" is no different from an employee at the music, bookstore, or library organizing the tapes, CDs, and books according to, for example, genres or call numbers.  And claim 14's enabling a user to "manage content contributed by them" is equivalent to a consumer or student being able to create and/or add content to the collection of music or books available at the retail store or library (*e.g.*, by writing a book or donating her copy of an existing book).  Such contributed content is then accessible to both the contributing consumer and to other consumers.

That claim 14 purports to recite certain "concrete, tangible components," such as "a server" and "a communications link," does not make the claim any less abstract where the '177 patent "makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea."  *In re TLI*, 823 F.3d at 611; *see infra* Section VII.B

(demonstrating that all of claim 14's elements are generic computer components and functions). In fact, contrary to IV's assertion that the '177 patent's claims are directed to "specific" "client-server portal systems" (Dkt. 126 at 17-18; Dkt. 137 at 7), the '177 patent explains that "**any device** that is capable of connecting to a network-based environment" and "**any type of network environment** can be used." '177 patent, 8:6-7, 14:67-15:4.[10]  Although claim 14 is not limited to the Internet or any particular network environment (*id*.), even if it were, "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

Moreover, unlike claims that have been held to be patent-eligible, claim 14 is not "directed to an improvement in the functioning of a computer" or "rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Cf. Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).  Rather, the '177 patent purports to "provide improvements in the way demand for information is identified, content is generated in response to a defined demand, and the way in which users access desired information." '177 patent, 2:23-26.  None of those alleged improvements is an improvement to computer functionality.  And, as mentioned above, the '177 patent admits that challenges associated with the "storage and retrieval of information" existed "in textbooks and libraries" before the Internet. '177 patent, 1:30-33.  In addition, the "basic nature" of claim 14—a personal collection of online content—remains the same regardless of whether "content" can include "links to content," "information about content," or "information about users including

---

[10] All emphasis herein is added unless otherwise indicated.

information about which content a user has chosen."  "Links to content," "information about

content," and "information about users including information about which content a user has

chosen" are merely generic categories of information and neither the presence nor absence of

these information types transforms claim 14 into a technical improvement.

Claim 14 is analogous to claims that have been held to be directed to patent-ineligible

abstract ideas.  *Network Architecture*, 2017 WL 1398276, at *3 ("[T]he Federal Circuit and the

Supreme Court have 'found it sufficient to compare claims at issue to those claims already found

to be directed to an abstract idea in previous cases.'").  For example, the Federal Circuit has held

that claims directed to "locating information in a database, and . . . using an index that includes

tags and metafiles to locate the desired information" are drawn to the abstract idea of "creating

an index and using that index to search for and retrieve data."  *Erie Indemnity*, 850 F.3d at 1327

(internal citations omitted).  As another example, the Federal Circuit held that claims directed to

"customizing web page content as a function of navigation history and information about the

user" were drawn to the abstract idea of tailoring information presented to a user based on

particular characteristics.  *Capital One Bank*, 792 F.3d at 1369-70.  This Court has held that

claims directed to retrieving information based upon assigned digital labels were drawn to the

abstract idea of "gathering and labeling information to facilitate efficient retrieval of the labeled

information."  *Gonzalez v. Infostream Group, Inc.*, No. 2:14-cv-906-JRG, 2016 WL 1643313, at

*4 (E.D. Tex. Apr. 26, 2016) (Gilstrap, J.).  Here, the claimed creation of a personal collection or

library of online content is similarly abstract.

### B.    *Alice* Step Two: Claim 14 Lacks an Inventive Concept

The second step of the *Alice* inquiry requires determining whether the limitations of

claim 14, individually or as an ordered combination, add an "inventive concept" to "transform"

the claimed abstract idea into patent-eligible subject matter.  *Alice*, 134 S. Ct. at 2357 (internal

citations omitted).  Claim 14 has no such "inventive concept."[11]  Instead, claim 14 merely recites

a series of generic computer components and conventional activities for implementing the

abstract idea of developing and maintaining a personal collection of online content.  Contrary to

IV's assertion that the 177 patent recites "novel software" (Dkt. 126 at 23), claim 14 amounts to

nothing more than "[s]tating an abstract idea while adding the words 'apply it with a computer,'"

which is insufficient to confer patent eligibility.  *Alice*, 134 S. Ct. at 2358; *see also Network

Architecture*, 2017 WL 1398276, at *6 ("'Requiring the use of a "software" "brain" "tasked with

tailoring information and providing it to the user" provides no additional limitation beyond

applying an abstract idea, restricted to the Internet, on a generic computer.'") (quoting *Capital

One Bank*, 792 F.3d at 1371); *Gonzalez*, 2016 WL 1643313, at *4 (no inventive concept even if

claimed labeling had not previously been used or proposed in digital form for websites where

claims merely take well-known concept of labeling and apply it to the internet).

The claimed computer components—"server," "centralized access point of a user,"

"communications link," "distributed information access point," and "an administrative

---

[11] There are no genuine factual disputes where the specification admits that such claim
elements were conventional, even though whether a claim element or combination of elements is
well understood, routine and conventional to a skilled artisan in the relevant field is a question of
fact.  *Berkheimer*, 890 F.3d at 1371.  Here, the specification admits that the claimed elements of
claim 14 were well known, routine, and conventional and nothing in the specification nor IV's
amended complaint contradicts that conclusion.  *Automated Tracking*, 723 F. App'x at 995 (no
factual dispute where specification indicated claimed components are conventional and
complaint had no allegations that any claimed components were anything but conventional); *cf.*
*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (factual dispute where claims
contained limitations directed to arguably unconventional inventive concept described in the
specification); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-30
(Fed. Cir. 2018) (factual dispute where complaint included allegations that claims improve the
functioning and operation of the computer itself).

interface"—are all purely generic computer components that the '177 patent admits—and courts have held—are not inventive.  For example, the '177 patent explains that the claimed "server" is not a new or improved type of server but rather, merely one or more generic computers located at physical locations that can be used on the World Wide Web.  '177 patent, 10:19-25; *see Network Architecture*, 2017 WL 1398276, at *6 (claimed "bulletin server" does not provide inventive concept where patent does not claim a new type of server).  Similarly, the "centralized access point of a user" and "distributed information access point" can each be a generic web page ('177 patent, 8:26-30, 14:43-53),[12] which the '177 patent describes in the "Background of the Invention" as a known "Web document" that can be "accessed and read via a Web browser such as Netscape Navigator or Internet Explorer" (*id.*, 1:59-64).  *Ultramercial*, 772 F.3d at 712, 715-16 (no inventive concept in claim that included "an Internet website").  That the '177 patent uses the terms "centralized access point of a user" and "distributed information access point" rather than "web page" does not change the fact that a "web page" is merely a generic computer component.  *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) ("The mere fact that the inventor applied coined labels to conventional structures does not make the underlying concept inventive.").

The claimed "communications link," which the '177 patent explains can include "an analog telephone line, or any other communication medium or communication link," such as a "cellular network" or "the Internet," is also a purely generic computer component.  '177 patent, 11:66-12:16; *see Capital One Fin. Corp.*, 850 F.3d at 1368 ("communication medium" is a

---

[12] As mentioned above, the Court construed "centralized access point of a user" as "a user's network resource that can be used to access content" and "distributed information access point" as "a network resource which is delivered to one or more users and that enables a user to interact with a centralized access point." Dkt. 116 at 20. As the Court noted, "[t]here appears to be no dispute between the parties that a network resource can include web pages." *Id*. at 17.

16

"generic computer element[]"); *Ultramercial*, 772 F.3d at 716 ("[T]he use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101.").  Additionally, the "administrative interface" does not provide an "inventive concept."  Dkt. 116 at 28.  As the Court acknowledged, the '177 patent describes the administrator's interface as "a software graphical user interface" (*e.g.*, a web page) that allows the administrator to perform administrative functions.  Dkt. 116 at 27-28; '177 patent, 8:38-47 ("administrators at Applicant's *web site* are able to manage" various content), 16:39-44 ("FIGS 5-61 illustrate by example *graphical user interface features* as seen from a client by a . . . system administrator and comprising hypertext mark-up language (HTML) . . . ."), 34:61-35:4 ("[A] system administrator accesses a *web page* corresponding with the screen display of FIG. 26," which depicts "an administrative page.").  Such "interface[s]" are "generic computer components [that] do not satisfy the inventive concept requirement."  *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016); *Capital One Bank*, 792 F.3d at 1370 (holding that an "interactive interface that manages web site content" is a generic computer element).  The Court's construction of "administrative interface" as "a software management tool that facilitates administrative functions" further confirms that "administrative interface" does not confer patent eligibility because it is defined "by the result it yields" (*i.e.*, facilitating administrative functions) and "not by its structural design or any mode for producing the result."  *Interval Licensing*, 2018 WL 3485608, at *9.

The functions performed by these generic computer components—"stor[ing]" information (*e.g.*, content, links to content, information about content), "provid[ing] the user with access to content chosen by or for the user," "list[ing]" content, "allow[ing] a user to choose content," "provid[ing] the user with logon access," "creat[ing] groupings of content," and

"manag[ing] content"—are themselves routine, conventional computer functions.  "Stor[ing]"

and "list[ing]" (*i.e.*, displaying) content are among the most routine functions of generic

computers. *See Mortgage Grader*, 811 F.3d at 1318, 1324-25 (no inventive concept in claims

reciting "***stor[ing]***" and "***display[ing]***" ***data***); *Elec. Power Grp.*, 830 F.3d at 1355 (no inventive

concept in claims directed to "***selecting information***, by content or source, ***for collection,***

***analysis, and display***").  Similarly, "allow[ing] a user to choose content" and "provid[ing] the

user with access" to such content (whether in the form of a link to content or the content itself) is

not even "arguably inventive."  *See* '177 patent, 1:57-62 ("The World Wide Web (WWW)

provides an Internet facility that links documents locally and remotely.  A Web document,

referred to as a Web page, includes ***links in a page that let users jump from page to page***

***(hypertext links)*** whether the pages are stored on the same server or on servers around the

world."); *Interval Licensing*, 2018 WL 3485608, at *9 ("Offering a user the ability to ***select***

***information to be displayed*** is one of the 'most basic functions of a computer.' . . . [Plaintiff]

does not, and cannot, contend that it is arguably inventive to ***enable a person to access***

***information over a network through a user interface***.").  Likewise, "provid[ing] the user with

logon access" and "manag[ing]" and "creat[ing] groupings of" content are well-known, routine,

and conventional activities that provide no inventive concept.  '177 patent, 47:5-12 (content can

be managed "within a ***standard web browser*** using JavaScript capabilities"); *In re TLI*, 823 F.3d

at 614 (no inventive concept in claim reciting a server that ***stores data according to***

***"classification information"***); *Capital One Bank*, 792 F.3d at 1370 ("***manag[ing] web site***

***content***" is a generic computer element); *Unloc USA, Inc. v. AVG Techs. USA, Inc.*, No. 16-cv-

393-RWS, 2017 WL 1154927, at *2, 6-8 (E.D. Tex. Mar. 28, 2017) (Schroeder, J.) (no inventive

concept in claim reciting process of ***logging into network***).  Claim 14 provides no inventive

concept even if "manag[ing] . . . content contributed" were limited to managing content accessible by users other than the contributor.  *Ultramercial*, 772 F.3d at 712, 715-17 (no inventive concept in claim that requires ***associating media product that is offered to consumers with sponsor message***).

The ordered combination of claim 14's limitations also fails to provide any inventive concept.  Claim 14 merely relies on "generic computer components used in a routine arrangement."  *Uniloc*, 2017 WL 1154927, at *8.  Indeed, as the '177 patent admits, the claims do not require any new inventive device or network architecture and can instead be implemented on "***any device*** that is capable of connecting to a network-based environment such as intranets, or ***any interconnected arrangement of devices*** capable of aggregating and distributing information to users."  '177 patent, 14:67-15:4; *see also id*., 8:6-7 ("***any type of network environment*** can be used" with the '177 patent's alleged invention).  Thus, rather than require a "non-conventional and non-generic arrangement of known, conventional pieces" (*Bascom Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)), claim 14 merely calls for the traditional arrangement of generic computer components for performing the claimed abstract idea.  Accordingly, the ordered combination of claim 14's limitations fails to provide the required inventive concept.  *Elec. Power Grp.*, 830 F.3d at 1355.

**VIII.   CONCLUSION**

Because claim 14 of the '177 patent is directed to an abstract idea and lacks any inventive concept, Defendants respectfully request that the Court grant judgment on the pleadings in favor of Defendants on the basis that claim 14 of the '177 patent is patent-ineligible under 35 U.S.C. § 101.

Dated: August 7, 2018                    Respectfully submitted,

                                          */s/ Vernon M. Winters*
                                         Vernon M. Winters
                                         California State Bar No. 130128
                                         (Admitted to the E.D. Tex. Bar)
                                         vwinters@sidley.com
                                         Irene Yang
                                         California State Bar No. 245464
                                         (Admitted to the E.D. Tex. Bar)
                                         irene.yang@sidley.com
                                         **SIDLEY AUSTIN LLP**
                                         555 California Street, Suite 2000
                                         San Francisco, CA 94104
                                         Telephone: (415) 772-1200
                                         Facsimile: (415) 772-7400

                                         Sharon Lee
                                         (admitted pro hac vice)
                                         sharon.lee@sidley.com
                                         Samuel A. Dillon
                                         (admitted pro hac vice)
                                         samuel.dillon@sidley.com
                                         **SIDLEY AUSTIN LLP**
                                         1501 K Street, NW
                                         Washington, D.C. 20005
                                         Telephone: (202) 736-8000
                                         Facsimile: (202) 736-8711

                                         Harry L. Gillam, Jr.
                                         Texas State Bar No. 07921800
                                         gil@gillamsmithlaw.com
                                         **GILLAM & SMITH, L.L.P.**
                                         303 South Washington Avenue
                                         Marshall, Texas 75670
                                         Telephone: (903) 934-8450
                                         Facsimile: (903) 934-9257

                                         *Counsel for Defendants and Counterclaimants*
                                         *BITCO General Insurance Corp., f/k/a,*
                                         *Bituminous Casualty Corp.; BITCO National*
                                         *Insurance Co., f/k/a Bituminous Fire and*
                                         *Marine Insurance Co; and Great West*
                                         *Casualty Company*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the above and foregoing document has been served by the Court's CM/ECF service on August 7, 2018 to all counsel of record who are deemed to have consented to electronic service.

/s/ Harry L. Gillam, Jr.
*Harry L. Gillam, Jr.*