# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 6:18-CV-00298-JRG |
| BITCO GENERAL INSURANCE CORPORATION F/K/A BITUMINOUS CASUALTY CORPORATION, ET AL., | § § § § § | (LEAD CASE) |
| *Defendants*. | § § | |

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO. 6:18-CV-00299-JRG |
| GREAT WEST CASUALTY COMPANY, | § § § | |
| *Defendant*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Rule 12(c) Motion for Judgment on the Pleadings that Claim 14 of U.S. Patent No. 7,516,177 is Patent-Ineligible Under 35 U.S.C. § 101 (the "Motion"). (Dkt. No. 178.[1]) Having considered the same, and for the reasons set forth herein, the Court finds that the Motion should be and hereby is **DENIED**.

---

[1] Unless otherwise indicated, all docket citations herein refer to documents filed in *Intellectual Ventures II LLC v. Bitco Gen. Ins Corp.*, Civ. No. 6:18-cv-298 (E.D. Tex.).

**I. PROCEDURAL HISTORY**

On January 20, 2015, Plaintiff Intellectual Ventures II LLC ("IV" or "Plaintiff") separately sued Defendants BITCO General Insurance Corporation f/k/a Bituminous Casualty Corporation and BITCO National Insurance Company f/k/a Bituminous Fire and Marine Insurance Company (collectively, "BITCO") and Defendant Great West Casualty Company ("Great West") (together, "Defendants") for infringement of U.S. Patent No. 7,516,177 (the "'177 Patent"). (*See* Case No. 6:18-cv-298, Dkt. No. 1 (originally filed as *Intellectual Ventures II LLC v. Bitco Gen. Ins Corp.*, Civ. No. 6:15-cv-59 (E.D. Tex.)); 6:18-cv-299, Dkt. No. 1 (originally file as *Intellectual Ventures II LLC v. Great W. Cas. Co.*, 6:15-cv-60 (E.D. Tex.).) The cases were consolidated for pretrial purposes with Case No. 6:15-cv-59 as the lead case. (*See* Dkt. No. 33.)

The '177 Patent generally relates to a technique for aggregating information content, such as Internet content, at a personalized access point of a user. *See* '177 Patent at Abstract. Claim 14—the sole asserted claim at issue—depends from and inherits all elements and limitations of independent Claim 11. Claim 11 recites:

> 11. An apparatus for distributing content through one or more distributed information access points to a centralized access point of a user, comprising:
>
> > at least one server operative to store one or more of: a) content, b) links to content, c) information about content, and d) information about users including information about which content a user has chosen;
> >
> > a centralized access point of a user accessible via a communications link and operative to provide the user with access to content chosen by or for the user;
> >
> > at least one distributed information access point accessible via a communications link and operative to implement one or more of: a) list one or more content objects, b) allow a user to choose content for addition to their centralized access point, and c) provide the user with logon access to their centralized access point; and
> >
> > an administrative interface in communication with the server and operative to create groupings of content into one or more distributed information access points;

> wherein a user is enabled with the capability to log on to their centralized access point from one or more distributed information access point(s) and access content chosen from one or more distributed information access point(s).

'177 Patent at 55:4–27. Claim 14 recites:

> 14. The apparatus of claim 11 wherein the centralized access point is further operative to enable a user to manage any content contributed by them.

*Id.* at 55:35–37.

### A. Claim Construction

On January 11, 2016, the Court construed the following disputed terms:

| Claim Term | Construction |
| --- | --- |
| "centralized access point of a user" | "a user's network resource that can be used to access content." |
| "distributed information access point" | "a network resource which is delivered to one or more users and that enables a user to interact with a centralized access point" |
| "administrative interface" | "a software management tool that facilitates administrative functions" |

(Dkt. No. 116 at 20, 28.)

### B. PTAB Proceedings

On February 25, 2016, Defendants moved, pursuant to Rule 12(c), to invalidate the '177 Patent under 35 U.S.C. § 101 (the "Initial 12(c) Motion"). (Dkt. No. 124.) However, in view of the Patent Trial and Appeal Board's ("PTAB") institution of *inter partes* review ("IPR") on challenged claims of the '177 Patent, the Court granted Defendants' Motion to Stay on May 12, 2016, without deciding the Initial 12(c) Motion. (*See* Dkt. Nos. 131, 145; *see also* Dkt. No. 183-5 (*Great W. Cas. Co. v. Intellectual Ventures II LLC*, IPR2015-01706, Paper No. 10 (PTAB Feb. 9, 2016) (granting partial institution of the '177 Patent but denying institution on Claims 11–15)); 183-6 (*Great W. Cas. Co. v. Intellectual Ventures II LLC*, IPR2015-01707, Paper No. 11 (PTAB Feb. 9, 2016) (granting partial institution of the '177 Patent but denying institution on Claim 14)).)

The Court continued the stay pending the PTAB's final written decision in a separate IPR proceeding involving the '177 Patent between IV and defendants in another lawsuit. (*See* Dkt. No. 150.) The PTAB issued a final written decision on January 8, 2018, finding Claim 14 patentable under 35 U.S.C § 103. (*See* Dkt. No. 183-7 (*Oracle Am. Inc. v. Intellectual Ventures II LLC*, IPR2016-01434, Paper No. 52, at 33–34 & n.15, 39, 41 (PTAB Jan. 8, 2018) (holding that Claim 14 is patentable and Claims 11–13 and 15–20 are unpatentable)).)

### C. Continued District Court Proceedings

On March 14, 2018, IV moved to sever and lift the stay as to Claim 14. (Dkt. No. 158.) On June 21, 2018, the Court granted IV's motion, lifted the stay as to Claim 14, and severed the parties' claims pertaining to Claim 14 from Case Nos. 6:15-cv-59 and 6:15-cv-60 into Case Nos. 6:18-cv-298 and 6:18-cv-299, respectively. (Dkt. No. 166.) The Court subsequently consolidated the severed proceedings for pretrial purposes and designated Case No. 6:18-cv-298 as the lead case. (Dkt. No. 172.)

On July 13, 2018, the Court denied Defendants' Initial 12(c) Motion without prejudice and ordered refiling "in light of the new precedent from the Federal Circuit on § 101 and the recently lifted stay in this case." (Dkt. No. 173 at 1.) Defendants subsequently filed the Motion on August 7, 2018, challenging the patent-eligibility of Claim 14 under § 101. (Dkt. No. 178.) Since both Defendants and Plaintiff submitted evidence outside the scope of what can properly be considered under Federal Rule of Civil Procedure 12(c)[2], pursuant to Rule 12(d), the Court converted the Motion to a motion for summary judgment under Federal Rule of Civil Procedure 56. (Dkt. No.

---

[2] Defendants submitted claim constructions pursuant to the Court's claim construction order and the PTAB's IPR claim constructions. (Dkt. No. 178 at 7–8.) Plaintiff submitted institution and final written decisions from three IPR decisions and one covered business method ("CMB") review decision. (Dkt. No. 183 at 8, 12–13).

198.) The Court heard oral arguments from the parties on November 16, 2018. (*See* Dkt. No. 201.)

## II. LEGAL STANDARDS

### A. Summary Judgment Under Rule 56

Federal Rule of Civil Procedure 56(c) authorizes a Court to grant summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." A dispute about a material fact is "genuine" if the evidence presented, viewed in the light most favorable to the nonmoving party, would permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, such evidence, whether it is offered by the movant to satisfy their initial burden or by the nonmovant to defeat a properly supported motion for summary judgment, may not consist entirely of "conclusory allegations" or "unsubstantiated assertions." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### B. Patent Eligibility Under 35 U.S.C. § 101

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The Supreme Court instructs courts to distinguish between claims that set forth patent ineligible subject matter and those that "integrate the building blocks into something more." *Id.*

First, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 2355. In doing so, the court must be wary not to over generalize the invention, as "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or

5

abstract ideas." *Alice*, 134 S. Ct. at 2354 (omission in original). In other words, the court must distinguish between "ineligible 'abstract-idea-based solution[s] implemented with generic technical components in a conventional way' from the eligible 'technology-based solution' and 'software-based invention[] that improve[s] the performance of the computer system itself.'" *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016)) (alteration in original).

If the challenged claims recite a patent-ineligible concept, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359). The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). As such, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Something is not necessarily well-understood, routine, and conventional simply because it is disclosed in a prior art reference. *Exergen Corp. v. KAZ USA, Inc.*, No. 2016-2315, 2018 WL 1193529, at *4 (Fed. Cir. March 8, 2018). There are many obscure references that may qualify as prior art but are insufficient to establish something is "well-understood, routine, and conventional activit[ies] previously engaged in by scientists who work in the field." *Mayo*, 566 U.S. at 79. Additionally, specific improvements described in a patent specification, "to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Berkheimer*, 881 F.3d at 1369. However, "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, [patent eligibility] can be decided on summary judgment as a matter of law." *Berkheimer*, 881 F.3d at 1368.

## III. DISCUSSION

To prevail on a § 101 challenge, the movant must show that the challenged claims first fail the "ineligible concept" step and then also fail the "inventive concept" step of the *Alice* test. Here, Defendants contend that Claim 14 fails both steps.

### A. *Alice* Step One: The Ineligible Concept Step

Defendants argue that Claim 14 is directed to the abstract idea of developing a personal collection or library of online content, analogous to "age-old practice[s] that existed well before the advent of computers and the Internet" for selecting desired content (e.g., tapes, CDs, books, etc.) from a store or library for inclusion in a personal collection or library. (Dkt. No. 178 at 11–12.) Consequently, Defendants contend that "enabling a user to 'manage content contributed by them'" as set forth in Claim 14 is analogous to a person "creat[ing] and/or add[ing] content to the

7

collection of music or books available at [a] retail store or library . . . . [s]uch [that the] contributed content is then accessible to both the contributing [person] and to other [persons]."  (*Id.* at 12.)

Additionally, Defendants argue that Claim 14 is neither "directed to an improvement in the functioning of a computer" nor "rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" because the '177 Patent admits that the "challenges associated with the 'storage and retrieval of information' existed in textbooks and libraries."  (*Id.* at 13 (citing '177 Patent at 1:30–33; *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)).)  Defendants also argue that Claim 14 does not set forth a technical improvement in computer network technology because the '177 Patent discloses that "any device," "any interconnected arrangement of devices," and "any type of network environment can be used."  (Dkt. No. 184 at 4 (citing '177 Patent at 8:6–7, 14:67–15:4).)  Consequently, Defendants argue that Claim 14 simply applies the alleged abstract idea to generic computer components.  (Dkt. No. 184 at 5.)

Finally, Defendants argue that Claim 14 is analogous to patent-ineligible claims for "creating an index and using that index to search for and retrieve data," *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017), "tailoring information presented to a user based on particular characteristics," *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369–70 (Fed. Cir. 2015), and "gathering and labeling information to facilitate efficient retrieval of the labeled information," *Gonzalez v. Infostream Group, Inc.*, No. 2:14-cv-906-JRG, 2016 WL 1643313, at *4 (E.D. Tex. Apr. 26, 2016).  (Dkt. No. 178 at 14.)

Plaintiff responds that Claim 14 is not directed to an abstract idea but is instead "directed to client-server portal systems that—using specific, non-generic software—operates to aggregate

and manage digital content, allow a user to log in to the system, and provide the user with access to the content chosen by or for the user." (Dkt. No. 183 at 7 (Response).) Plaintiff argues that Claim 14 "improves upon the content-distribution and retrieval mechanisms present in conventional Internet search engine technology" that search pre-indexed webpages by keywords. (*Id.* at 7–8, 10.) The '117 Patent's purported admissions identified by Defendants, when read in context, emphasize that the elements of, the problem to be solved by, and the solution set forth in Claim 14 exist only in a networked computer environment as exemplified by the Internet. (*See* Dkt. No. 185 at 5–6.)

As to Defendants comparing the subject matter of Claim 14 to brick-and-mortar stores or libraries, Plaintiff argues that Defendants' analogy ignores the computer network environment and specific software operations set forth in Claim 14. (Dkt. No. 183 at 9–11.) Plaintiff also argues that the '177 Patent describes how its claimed invention arose due to "the recent adoption and acceptance of online networks such as the Internet," and thus, Defendants' asserted abstract idea— developing a personal collection of online content—is not "long prevalent." (Dkt. No. 185 at 2 (citing '177 Patent at 1:33–35).) As such, Plaintiff argues that, similar to the patent-eligible claims in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, Claim 14 recites a specific, patent-eligible process for "storing and retrieving information in a computer network using a distributed, portal-based architecture that was not previously used." (Dkt. No. 183 at 11–12 (citing 837 F.3d 1299 (Fed. Cir. 2016)).)

Having considered the evidence and arguments presented, the Court finds that Claim 14 is not directed to an abstract idea. The Court is not persuaded that the "apparatus for distributing content through one or more distributed information access points to a centralized access point of a user" set forth in Claim 14 is comparable to Defendants' analogy of selecting and donating books

from and to a library or store. The analogy ignores the language of Claim 14, and the '177 Patent's specification, which provides a specific and distinct system for identifying and distributing information that includes a centralized access point that "provide[s] the user with access to content chosen by or for the user" and "enable[s] a user to manage any content contributed," at least one distributed information access point that "allow[s] a user to choose content for addition to their centralized access point," and an administrative interface "operative to create groupings of content into one or more distributed information access point(s)." '177 Patent at 55:4–27, 55:35–37. Contrary to Defendants' focus on the abstractness of developing a personalized access point, Claim 14 is directed to using the selection and contribution of content by the users to their respective personalized access points to distribute content through a network.

Moreover, although the '177 Patent invokes "textbooks and libraries" when discussing the scope of information storage and retrieval challenges associated with online networks (e.g., the Internet), the '177 Patent also notes that existing techniques for finding and accessing desired information over a network "fall[s] far short of meeting the needs of information providers and information users." *See* '177 Patent at 1:30–52. Specifically, the '177 Patent identifies keyword-based search engines that require pre-indexing of Internet content and explains the need "to provide improvements in the way demand for information is identified, content is generated in response to a defined demand, and the way in which users access desired information." *See id.* at 1:65–2:22.

Further, Defendants' proffered cases involving abstract ideas for transmitting, labeling, or indexing information for subsequent retrieval are distinguishable. Unlike ineligible claims that merely "collect[], organiz[e], and display . . . information on a generic display device," Claim 14 recites "a specific improvement to the way computer[] [networks] . . . operate." *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018). Specifically, the network

architecture set forth in Claim 14 "provide[s] the user with access to content chosen by or for the user" based on the contribution of content to the user's personalized access point and the personalized access points of users on the network, an arguably unconventional process. *See* '177 Patent at 55:4–27, 55:35–37; *see also id.* at 23:46–48, 30:36–45, 46:18–20; *cf. In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016); *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). Furthermore, a user contributing content to their personalized access point facilitates subsequent selection and retrieval of the contributed content by *other* users of the claimed network. *Cf. Erie Indemnity*, 850 F.3d 1315, 1327; *Gonzalez*, 2016 WL 1643313, at *4.

Therefore, the Court finds that Claim 14 of the '177 Patent is not directed to an abstract concept under *Alice* Step One. However, out of an abundance of caution, the Court now proceeds to also consider the patent-eligibility of Claim 14 under the second step of the *Alice* test.

**B. *Alice* Step Two: The Inventive Concept Step**

Defendants argue that Claim 14 lacks an inventive concept because that "[t]he claimed computer components—'server,' 'centralized access point of a user,' 'communications link,' 'distributed information access point,' and 'an administrative interface'—are all purely generic computer components that the '177 [P]atent admits—and courts have held—are not inventive." (*See* Dkt. No. 178 at 15–17 (citing '177 Patent at 1:59–64, 8:26–30, 10:19–25, 11:66–12:16, 14:43–53).) Defendants argue that (1) "the 'problem' that Claim 14 purportedly solves did not arise specifically on computers or the Internet;" (2) the "'177 [P]atent admits that the problem of 'storage and retrieval of information' pre-existed computers and the Internet 'in textbooks and libraries;'" and (3) the '177 Patent admits that Claim 14 is "well understood, routine, and conventional." (*See* Dkt. No. 178 at 17–19; Dkt. No. 184 at 6–7 (citing '177 Patent at 1:30–33).)

11

Further, Defendants argue that the ordered combination set forth in Claim 14 fails to provide any real innovation because the '177 Patent "does not require any new inventive device or network architecture and can instead be implemented on 'any device that is capable of connecting to a network-based environment such as intranets, or any interconnected arrangement of devices capable of aggregating and distributing information to users'" and "any type of network environment can be used." (Dkt. No. 178 at 19 (citing '177 Patent at 8:6–7, 14:67–15:4).)

Defendants also argue that Plaintiff's patent-eligible cases are distinguishable because Claim 14 is not directed to improving computer technology itself, is not directed to a problem unique to computer networks, and includes conventional computer functions. (Dkt. No. 184 at 8.) Further, Defendants argue that the "PTAB's determination that Claim 14 is patentable over certain prior art under 35 U.S.C. §§ 102 and/or 103 has no bearing on patent eligibility under § 101." (*See id.* at 9 (citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (explaining that it is not "enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art, passing muster under 35 U.S.C. §§ 102 and 103"); *Contentguard Holdings, Inc. v. Amazon.com, Inc.*, 142 F. Supp. 3d 510, 516 (E.D. Tex. 2015) ("obviousness and eligibility question require separate and distinct analyses")).)

Plaintiff responds that Claim 14 improves upon "prior art search engine software that collect[ed] and distribute[d] information (collects Internet content) using web crawlers or indexes and then presents a user with the content that matches a keyword search" by using a combination of distributed information access point, centralized access point, and administrative interface software to aggregate digital content and provide access to the same as selected by and for a specific user. (*See* Dkt. No. 183 at 14–15 (citing '177 Patent at 1:65–2:22).) Plaintiff also argues that the PTAB's rejection of "invalidity grounds for Claim 14 across three substantive [IPR]

decisions"[3] indicates that Claim 14 "is neither conventional nor generic" and "clearly show[s] and support[s] the existence of a fact question on subject matter eligibility." (*See* Dkt. No. 183 at 12–13 (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347 (Fed. Cir. 2015); *Ericsson Inc. v. TCL Commun. Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2017 U.S. Dist. LEXIS 183216, at *26 (E.D. Tex. Nov. 4, 2017).)

Further, Plaintiff argues that although "the '177 Patent does not assert inventions in general servers, databases, or communication links," Claim 14 recites "a non-conventional and non-generic arrangement of those components, executing a novel combination of network software—distributed information access points, centralized access points that allow a user to manage content, and an administrative interface" to "avoid the problem of too much electronic information." (Dkt. No. 183 at 17–18.) The claimed hardware and software elements of Claim 14 and the operations thereof allow users to "control the flood of information created by the [I]nternet." (Dkt. No. 185 at 6.)

As an initial matter, the Court does not consider the PTAB's three IPR decisions related to Claim 14 under 35 U.S.C. §§ 102 and 103 as dispositive regarding the conventionality of Claim 14 under § 101. *See Contentguard*, 142 F. Supp. 3d at 516 ("[T]he Court does not consider the PTAB's decisions or the 'objective indicia of non-obviousness' particularly relevant or helpful to the patent-eligibility inquiry."); *but see Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347 (Fed. Cir. 2015) ("Courts have found guidance in deciding whether the allegedly abstract idea (or other excluded category) is indeed known, conventional, and routine, or contains

---

[3] Plaintiff also argues that the PTAB's decision not to institute CBM review indicates that Claim 14 is patent-eligible. (Dkt. No. 183 at 8.) However, the PTAB's CBM decision did not reach the merits of whether Claim 14 is patent-eligible. (*See generally*, Dkt. No. 183-2 (*Great W. Cas. Co. v. Intellectual Ventures II LLC*, CBM2015-00171, Paper No. 10, at 13 (PTAB Feb. 9, 2016) ("[W]e are not persuaded that the information presented in the Petition establishes that any existing claim in the '177 [P]atent[] qualifies as a covered business method patent under § 18(d)(l) of the AIA.")).)

13

an inventive concept, by drawing on the rules of patentability."). Just as "the mere fact that something is disclosed in a piece of prior art . . . does not mean it was well-understood, routine, and conventional," the lack of invalidating prior art does not mean that the ordered combination of Claim 14 is not well-understood, routine, and conventional. *See Berkheimer*, 881 F.3d at 1369.

That said, the Court finds that the PTAB's consistent rejection of patentability challenges as to Claim 14 supports the recognition of a material factual dispute relating to whether the ordered combination of Claim 14 describes well-understood, routine, and conventional activities. Such a material factual dispute would preclude summary judgment under Federal Rule of Civil Procedure 56. For example, Claim 14 requires that "the centralized access point is further operative to enable a user to manage any content contributed by them." The parties did not dispute the construction of "content contributed" set forth in Claim 14 before this Court, and thus the term is afforded its plain and ordinary meaning. (*See generally* Dkt. No. 116 (Claim Construction Order).) However, the PTAB construed "content contributed," under the broadest reasonable interpretation standard, as "content provided so it is accessible by at least one user other than the contributor." *See Oracle*, IPR2016-01434, Paper No. 52, at 19.

The PTAB's construction appears consistent with the '177 Patent's express disclosure that "when a user adds a content object to their personal [web page], they are actually adding a 'link' to that specific content object" such that the content object may be categorized within the network to be "publicly viewable by users and contributors of information." *See* '177 Patent at 23:46–48, 30:36–45, 46:18–20. Similarly, Plaintiff's expert also contends that "there is a clear inventive concept" in the "ability of a user to create a personal collection of information that is important to them and create and manage new content available to themselves and others through the same set

14

of architecture and interfaces" that improves "the operation of web-based computer systems." (*See* Dkt. No. 199-1 at 3 (Declaration of Stephen Gray[4]) (emphasis in original)).

Additionally, the '177 Patent does not concede that the afore-mentioned functionality set forth in Claim 14 is well-understood, routine, or conventional.[5] *Cf. Berkheimer v. HP Inc.*, 890 F.3d 1369, 1371 (Fed. Cir. 2018) (per curiam) (denying en banc review) ("where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute."). Rather, the '177 Patent suggests that the system set forth in Claim 14 is not routine, well-known, or conventional, and Defendants have not provided sufficient rebuttal evidence to the contrary.

Accordingly, the Court finds that questions of material fact remain as to whether those skilled in the art would consider the limitations of Claim 14 to "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Cf. Content Extraction*, 776 F.3d at 1347–48; *see also Berkheimer*, 881 F.3d at 1368. As such, Defendants pursuit of summary judgment on the second *Alice* prong must also fail.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion for Judgment on the Pleadings (Dkt. No. 178), having been converted to a motion for summary judgment (Dkt. No. 198), is **DENIED**.

---

[4] Although Dr. Stephen Gray's declaration appears to include numerous conclusory statements, the Court finds that the quoted portion herein is consistent with the '177 Patent and the PTAB's understanding of the claim language.
[5] The portions of the '177 Patent that Defendants rely on as conceding conventionality relate to underlying hardware components and network interconnections. *See* '177 Patent at 8:6–7, 14:67–15:4.

**So ORDERED and SIGNED this 24th day of January, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE