Intellectual Ventures II LLC,

     *Plaintiff and*
     *Counter-Defendant*,

    v.

BITCO General Insurance Corp., f/k/a,
Bituminous Casualty Corp.; and BITCO
National Insurance Co., f/k/a Bituminous
Fire and Marine Insurance Co.,

     *Defendants and*
     *Counterclaimants*.

Case No. 6:18-CV-00298-JRG

LEAD CASE

**ORAL ARGUMENT REQUESTED**

Intellectual Ventures II LLC,

     *Plaintiff and*
     *Counter-Defendant*,

    v.

Great West Casualty Company,

     *Defendant and*
     *Counterclaimant*.

Case No. 6:18-CV-00299-JRG

## BITCO AND GREAT WEST'S SEALED MOTIONS *IN LIMINE*

# TABLE OF CONTENTS

I.    MIL No. 1: Preclude arguments or evidence denigrating Defendants, including criticisms of insurance companies or their alleged general failure to license patents, painting a "David and Goliath" scenario, analogizing Defendants' conduct to failure to properly pay out an insurance claim, analogizing invalidation of a patent to taking a loved one away, or analogizing patent infringement to theft, criminal activity, "free riding," piracy, and the like ................................. 1

II.    MIL No. 2: Preclude mention, argument, or evidence of other litigation involving Defendants or members of their corporate family ......................................................... 1

III.    MIL No. 3: Preclude argument, evidence, or suggestion that a Defendant forced IV II to "waste the jury's time" by not settling or the like ......................................................... 2

IV.    MIL No. 4: Preclude argument, evidence, or suggestion that HCC or any other company settled or licensed because it knew it infringed or that the '177 patent was valid......................... 2

V.    MIL No. 5: Preclude argument or suggestion that Defendants' systems work the same way as companies who have licensed, or that licenses show Defendants infringe ............................... 3

VI.    MIL No. 6: Preclude argument or suggestion that license agreements show that the '177 patent is valid ...................................................................................................... 4

VII.    MIL No. 7: Preclude argument, evidence, or suggestion of widespread infringement by third parties ................................................................................................... 4

VIII.    MIL No. 8: Preclude argument or suggestion that non-infringement and patent invalidity are "excuses" or the like .................................................................................... 5

IX.    MIL No. 9: Preclude evidence or argument that products of IV II, the inventors, or any third party practice the patent ...................................................................................... 5

X.    MIL No. 10: Preclude arguments or evidence regarding whether Defendants obtained opinions of counsel .............................................................................................. 6

XI.    MIL No. 11: Preclude mention of Dr. Crovella's patents, except as it relates to his qualifications...................................................................................................... 6

XII.    MIL No. 12: Limit IV II's infringement proofs consistent with its stipulations at Dkt. 229-1 and Dkt. 230-1 ............................................................................................ 7

XIII.    MIL No. 13: Preclude evidence or argument from IV II that links to content, information about content, or information about users are "content" ............................................... 8

XIV.    MIL No. 14: Preclude IV II from arguing or suggesting that Defendants engaged in copying.......................................................................................................... 9

XV.    MIL No. 15: Preclude references to or arguments regarding the findings or outcomes of PTAB post-issuance proceedings, except that testimony and statements may be used for impeachment without identifying that they are from a PTAB post-issuance proceeding ........... 10

XVI.    MIL No. 16: Preclude references to total sales, revenues, profits, and overall financial status of Defendants or any of Defendants' affiliated companies ................................................ 11

XVII.    MIL No. 17: Preclude references to BITCO, including the outcome of the BITCO trial, in the Great West trial, and vice versa ................................................................................. 13

XVIII.    MIL No. 18: Preclude references to the licenses and information therein that are undisputedly not relevant to the damages analysis ...................................................................... 14

XIX.    MIL No. 19:  Preclude commentary about the absence of potential witnesses over whom a party has no control without leave of Court............................................................................. 15

XX.    MIL No. 20:  Preclude argument or evidence by Plaintiff about entities that are not Plaintiff ........................................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Biscotti Inc. v. Microsoft Corp.*,
No. 2:13-CV-01015, 2017 WL 2537021 (E.D. Tex. May 30, 2017)......................................10

*Callaway Golf Co. v. Acushnet Co.*,
576 F.3d 1331 (Fed. Cir. 2009)..........................................................................................10

*ContentGuard v. Amazon.com*,
No. 13-cv-01112-JRG, 2015 WL 12915561 (E.D. Tex. Aug. 3, 2015) ...............................10

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009).............................................................................................9

*Eolas Technologies, Inc. v. Microsoft Corp.*,
270 F.Supp. 2d 997 (N.D. Ill. 2003) .....................................................................................9

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
No. 13-cv-03999-BLF, 2015 WL 4129193 (N.D. Cal. Jul. 8, 2015).......................................9

*Intellectual Ventures I LLC v. Old Republic General Insurance Grp., Inc.*,
No. 2:14-cv-1130 (W.D. Pa.)..................................................................................................2

*Intellectual Ventures II LLC v. FedEx Corp.*,
No. 2:16-cv-980-JRG, Dkt. 505 (E.D. Tex. Apr. 26, 2018) ...................................................1

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d. 51 (Fed. Cir. 2012)..............................................................................................11

*Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*,
No. 1:12-cv-654, 2016 WL 4238769 (W.D. Mich. Jan. 28, 2016).........................................10

*MobileMedia Ideas, LLC v. HTC Corp.*,
No. 2:10-cv-112-JRG, 2013 WL 12158524 (E.D. Tex. Apr. 24, 2013)............................12, 13

*Personalized Media Comms., LLC v. Zynga, Inc.*,
No. 2:12-cv-00068-JRG-RSP, Dkt. 232 (E.D. Tex. Nov. 8, 2013) .......................................11

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd. et al.*,
No. 2:13-cv-213-JRG-RSP, 2015 WL 627430 (E.D. Tex. Jan. 31, 2015) .......................10, 12

*SimpleAir, Inc. v. Google, Inc.*,
No. 2:11-cv-416-JRG, Dkt. 693 (E.D. Tex. Mar. 12, 2014)............................................13, 15

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011).............................................................................................2

**Statutes**

35 U.S.C. § 298 ...................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 36(b) ..........................................................................................................8

Fed. R. Civ. P. 37 ...........................................................................................................3, 6

Fed. R. Evid. 402 ..................................................................................................... *passim*

Fed. R. Evid. 403 ..................................................................................................... *passim*

Fed. R. Evid. 404 ...............................................................................................................1

I.      **MIL No. 1: Preclude arguments or evidence denigrating Defendants, including criticisms of insurance companies or their alleged general failure to license patents, painting a "David and Goliath" scenario, analogizing Defendants' conduct to failure to properly pay out an insurance claim, analogizing invalidation of a patent to taking a loved one away, or analogizing patent infringement to theft, criminal activity, "free riding," piracy, and the like**

As this Court has recognized, it is improper for a party to advance its case by denigrating the other at trial. *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-980-JRG, Dkt. 505 at 10 (E.D. Tex. Apr. 26, 2018). Accordingly, Defendants request an order precluding Plaintiff Intellectual Ventures II LLC ("IV II") from doing so, as set forth in MIL No. 1. For example, Defendants are insurance companies, and the Court should not permit irrelevant criticisms of insurance companies such as negative statements about whether they fairly pay out insurance claims. Fed. R. Evid. 402, 403. Nor should the Court permit suggestions that Defendants or insurance companies in general do not take licenses to patents. Fed. R. Evid. 402, 403, 404.

The Court should also preclude inflammatory and denigrating analogies by IV II, such as analogizing patent infringement to theft or other criminal activity, analogizing invalidating a patent to taking away custody of a child, analogizing Defendants' refusal to license IV II's patent to a refusal to pay out an insurance claim, or similar statements. This type of argumentation serves no purpose other than to unfairly seek to inflame the passions of the jury and should be precluded under Fed. R. Evid. 402, 403.

II.     **MIL No. 2: Preclude mention, argument, or evidence of other litigation involving Defendants or members of their corporate family**

References to other litigation involving Defendants or their corporate families should be precluded as irrelevant, unfairly prejudicial, and confusing. Fed. R. Evid. 402, 403.

Defendants are each part of the Old Republic family of companies operating in the insurance business, which leads to litigation from time to time. Any other litigation involving Defendants (let alone their non-party corporate family members) is irrelevant to the present

cases. Fed. R. Evid. 402. Moreover, particularly given that insurance litigation as a general matter may involve highly personal or emotional circumstances, the probative value of mentioning any such litigation would be overwhelmingly outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Furthermore, as a specific example, an Intellectual Ventures entity has previously sued other members of the Old Republic family for infringement of different patents, and any mention of that lawsuit should be excluded as irrelevant, unfairly prejudicial, and confusing to the jurors. *Intellectual Ventures I LLC v. Old Republic General Insurance Grp., Inc.*, No. 2:14-cv-1130 (W.D. Pa.).

### III.    MIL No. 3: Preclude argument, evidence, or suggestion that a Defendant forced IV II to "waste the jury's time" by not settling or the like

IV II should be precluded from arguing that Defendants forced IV II to "waste the jury's time" by not settling. This type of argument is untethered to any merits issue and unfairly prejudices Defendants who choose to defend themselves before a jury. Fed. R. Evid. 402, 403. It also runs the risk of veering into or divulging settlement discussions, which are inadmissible under Fed. R. Evid. 408.

### IV.    MIL No. 4: Preclude argument, evidence, or suggestion that HCC or any other company settled or licensed because it knew it infringed or that the '177 patent was valid

IV II recently resolved an unrelated, parallel case against HCC Insurance Holdings, Inc.[1] before this Court involving the '177 patent. IV II should be precluded from suggesting that HCC settled because it knew that the '177 patent was valid or infringed. More generally, IV II should be precluded from suggesting that any other company entered a settlement or license because it knew or believed the '177 patent was valid or infringed.

---

HCC does not use the same accused system as Great West or BITCO, and even if it did, the issue is whether Defendants infringe, not whether HCC believed it infringed (Fed. R. Evid. 402). Furthermore, sideshows about whether a third party using a different system thought it infringed would only create juror confusion and unfair prejudice to Defendants (Fed. R. Evid. 403).

IV II is also precluded under Fed. R. Civ. P. 37 from discussing HCC's beliefs about infringement or validity because IV II has denied Defendants discovery into those issues beyond the ████████████████ Defendants asked that IV II produce documentation related to negotiation of the ██████ but to date, IV II has refused. *See* Ex. 1 to Sealed Declaration of Andrew T. Langford in Support of Defendants' Motions in *Limine* ("Langford Declaration"). Defendants never had a chance to seek discovery from third party HCC, given that the ████ ████████████████████████████████ well after fact discovery in these cases closed and less than three months before the March 4, 2019 trial date.

## V.  MIL No. 5: Preclude argument or suggestion that Defendants' systems work the same way as companies who have licensed, or that licenses show Defendants infringe

Third parties including ████████████ and HCC have entered into settlements involving the '177 patent. IV II should be precluded from suggesting that Defendants' accused products work the same way as companies that settled, or that licenses to the '177 patent are somehow evidence that Defendants infringe.

The proper comparison for purposes of infringement is between the accused products and the patent claims. Any other comparison or suggestion to engage in another comparison is irrelevant (Fed. R. Evid. 402) and risks substantial juror confusion and prejudice (Fed. R. Evid. 403).

## VI.  MIL No. 6: Preclude argument or suggestion that license agreements show that the '177 patent is valid

Likewise, IV II should not be permitted to argue or offer evidence that licenses to the

'177 patent show the patent is valid. IV II's expert reports do not contain any analysis of

secondary considerations, and no IV II expert has offered an opinion that patent licenses are

evidence of non-obviousness. Moreover, Defendants propounded an interrogatory about

objective indicia, and IV II did not identify any objective indicia it would rely on at trial (based

on licensing or otherwise). *See* Ex. 2 at 9-10 (Response to Interrogatory No. 5). Accordingly, IV

II has waived any right to advance objective indicia at trial, including any argument based on

licenses.

## VII.  MIL No. 7: Preclude argument, evidence, or suggestion of widespread infringement by third parties

IV II should be precluded from eliciting testimony or suggesting through counsel that

there is widespread infringement or use of the '177 patent by third parties. Infringement by third

parties is irrelevant: the issue in these cases is whether BITCO or Great West has infringed (Fed.

R. Evid. 402). Statements about third party infringement also create a high risk of jury confusion

and unfair prejudice to Defendants, as the jury may believe that infringement by unrelated parties

suggests infringement by Defendants, or that Defendants should compensate IV II to some

degree for alleged infringement by third parties (Fed. R. Evid. 403).

Moreover, IV II's technical experts Dr. Smith and Mr. Gray have not submitted any

expert reports analyzing infringement by third parties, and there would thus not be any

foundation for IV II to talk about widespread infringement at trial nor a fair opportunity for a

rebuttal case.

## VIII. MIL No. 8: Preclude argument or suggestion that non-infringement and patent invalidity are "excuses" or the like

Characterizing affirmative defenses to a jury as "excuses" is improper for two reasons. First, it creates a great danger of unfair prejudice and jury confusion because it implies that non-infringement and invalidity are mere "excuses" that do not defeat the Plaintiff's claim, rather than legally recognized defenses. Fed. R. Evid. 403. Second, because non-infringement and invalidity are a complete defense to liability for patent infringement, not simply "excuses," this type of argument is legally irrelevant. Fed. R. Evid. 402.

## IX. MIL No. 9: Preclude evidence or argument that products of IV II, the inventors, or any third party practice the patent

The Court should preclude argument and evidence at trial that any product of IV II, the '177 patent inventors, or a third party practices the '177 patent.

With respect to IV II and the '177 patent inventors, IV II is precluded by its discovery responses. In particular, IV II's P.R. 3-1(f) disclosures stated that IV II "does not presently contend that any of its products or services practice or otherwise embody any of the asserted claims of the '177 patent." Ex. 3 at 3 (contentions to BITCO); Ex. 4 at 3 (contentions to Great West). Moreover, Defendants' Interrogatory No. 8 asked IV II to "identify each system or product created by the Named Inventors of the '177 patent, or anyone else, that practices any of the Claims-in-Suit of the '177 patent, and describe in detail how each such system meets each element of each practiced claim." Ex. 5 at 5-6. In response, IV II stated that it "has no opinion on whether systems or products created by the Named Inventors of the '177 patent practice any of the Claims-in-Suit," and IV II did not identify any of its own products that practice the '177 patent. *Id.* at 6. IV II cannot change positions now.

As to third parties, the only third party systems that allegedly practice the '177 patent, according to IV II's response to Interrogatory No. 8, are websites associated with HCC (hcc.com,

portal.hcch.com, totaleventinsurance.com). *Id.* at 6. HCC is not a defendant in the case against

BITCO or the case against Great West. IV II's technical experts, Dr. Smith and Mr. Gray, have

not submitted any expert reports in the cases against Defendants analyzing any alleged

infringement of HCC or any third party. Indeed, despite requests by Defendants, IV II has not

produced copies of expert reports from the HCC litigation. Accordingly, IV II should not be

allowed to suggest that any third party has practiced the '177 patent, as unadjudicated

accusations of infringement by HCC or other third parties are irrelevant, confusing, and unfairly

prejudicial, and in any event, IV II failed to satisfy its discovery obligations to be entitled to

make any such references at trial. Fed. R. Evid. 402, 403, Fed. R. Civ. P. 37.

**X.      MIL No. 10: Preclude arguments or evidence regarding whether Defendants obtained opinions of counsel**

There should be no reference at trial to whether Defendants obtained an opinion of

counsel about the asserted patent (or any other patent). Opinions of counsel are irrelevant in this

case because the mental state of Defendants is not at issue—IV II has not made any allegation of

willful or indirect infringement. Fed. R. Evid. 402, 403. Moreover, 35 U.S.C. § 298 provides that

an accused infringer's failure "to obtain advice of counsel with respect to any allegedly infringed

patent, or the failure of the infringer to present such advice to the court or jury" cannot be used to

prove willful infringement or intent to induce infringement. The statute reflects Congress's

judgment that arguments about the lack of an opinion of counsel should be precluded entirely.

**XI.     MIL No. 11: Preclude mention of Dr. Crovella's patents, except as it relates to his qualifications**

Defendants' technical expert Dr. Crovella holds nine patents, none of which are at issue

in this case. At deposition, Plaintiff's counsel questioned Dr. Crovella about who owned all of

those patents and what royalty payments were due under them. Ex. 6 at 8:10-23:22. This

information has no bearing on the merits of the case and is irrelevant, and as a result, hearing the

information will likely confuse the jury. Accordingly, Defendants seek to exclude any mention of Dr. Crovella's patents under Fed. R. Evid. 402 and 403.

This motion would not preclude a party from asking Dr. Crovella about his patents as they relate to his qualifications.

## XII.    MIL No. 12: Limit IV II's infringement proofs consistent with its stipulations at Dkt. 229-1 and Dkt. 230-1

Claim 14 of the '177 patent is the only asserted claim in these cases, and it depends on independent claim 11. Both claim 11 and 14 invoke the limitation of a "centralized access point." BITCO and Great West each filed motions for partial summary judgment of non-infringement based on argument from IV II's infringement expert, Dr. Smith, that several pages on BITCO and Great West's websites were allegedly a "centralized access point" as covered by claim 11, but not the "centralized access point" of asserted claim 14. Dkt. 207 at 3-5; Dkt. 208 at 3-5. BITCO and Great West sought to avoid hopelessly confusing the jury if Dr. Smith were permitted to characterize webpages as "centralized access points" when they are not alleged to meet the requirements of a "centralized access point" for claim 14, the only asserted claim.

IV II, BITCO, and Great West were able to resolve these motions via stipulations that list out the webpages that IV II is alleging to meet the "centralized access point" requirement of claim 14. Dkt. 229-1 at 2; Dkt. 230-1 at 2.  BITCO and Great West respectfully request that the Court accordingly limit IV II's allegations regarding the "centralized access point" limitation to the specific pages as set forth in the parties' respective stipulations, as listed below:

| BITCO (Dkt. 229-1 ¶¶ 4-5) | Great West (Dkt. 230-1 ¶¶ 4-5) |
|---|---|
| • An "Agency Users" page on BITCO's delegated administrator agent portal as discussed on page 64 of Attachment 3 of the Hugh Smith infringement | • Agent Portal: A "Driver List by Policy" page as discussed on pages 68-69 of Attachment 3 of the Hugh Smith infringement expert report |

| | |
|---|---|
| expert report against BITCO; and<br><br>• An "Agency Users" page and a "Customers Enrolled in Portal" page on BITCO's security administrator employee portal as discussed on page 64 of Attachment 3 of the Hugh Smith infringement expert report against BITCO. | against Great West;<br><br>• Employee Portal: A home page as discussed on pages 79 and 84 of Attachment 3 of the Hugh Smith infringement expert report against Great West; and<br><br>• Legacy Portal: An alleged home page accessible to independent adjustor and independent attorney users as discussed on page 78 of Attachment 3 of the Hugh Smith infringement expert report against Great West. |

A practical result of the foregoing, as set forth in the statement of undisputed facts in BITCO and Great West's motions for partial summary judgment of non-infringement, is that some of BITCO and Great West's web portals undisputedly do not contain any "the centralized access point" of claim 14 whatsoever, in particular:

| BITCO | ███████████████████████ |
|---|---|
| | (*See* Dkt. 208 at 3-4 (undisputed facts ¶¶ 8-11)) |
| Great West | ███████████████ |
| | (*See* Dkt. 207 at 3-4 (undisputed facts ¶¶ 8-11)) |

IV II did not dispute BITCO and Great West's statements of undisputed material facts (*see* Dkts. 224, 225), and, consistent with its stipulations, IV II should be precluded from suggesting that the above-identified web portals infringe claim 14.

## XIII.  MIL No. 13: Preclude evidence or argument from IV II that links to content, information about content, or information about users are "content"

Claim 14 of the '177 patent is the only asserted claim in these cases. It recites "[t]he apparatus of claim 11 wherein the centralized access point is further operative to enable a user to manage any **content** contributed by them" (emphasis added).

In response to one of Defendants' Requests for Admission, IV II admitted that the claim term "content" "does not include 'links to content, information about content, and information

about users including information about which content a user has chosen.'" Ex. 7 (Response to RFA No. 120). Pursuant to Fed. R. Civ. P. 36(b), this "matter . . . is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." IV II has not sought to alter or withdraw its admission. Accordingly, while the parties may dispute whether certain information is "information about users," "information about content," or "links to content," IV II should be precluded from arguing that the claim term "content" encompasses "links to content," "information about content," or "information about users."

## XIV. MIL No. 14: Preclude IV II from arguing or suggesting that Defendants engaged in copying

Defendants respectfully request that this Court preclude IV II pursuant to Fed. R. Evid. 402 and 403 from arguing or suggesting that Defendants engaged in copying. IV II has not come forward with evidence that BITCO or Great West copied anyone else's technology, and copying is not relevant to any element of IV II's case—IV II has not alleged that BITCO or Great West willfully infringed or induced infringement of the '177 Patent, nor has IV II argued copying as a secondary consideration of non-obviousness. Allowing IV II to nevertheless argue or suggest that Defendants copied any IV II technology would risk jury confusion and unfair prejudice. *See Finjan, Inc. v. Blue Coat Systems, Inc.*, No. 13-cv-03999-BLF, 2015 WL 4129193, at *6 (N.D. Cal. Jul. 8, 2015) ("[T]here is significant prejudice associated with this evidence, as a jury may use evidence of copying to unfairly conclude that Defendant's products infringe the patents-in-suit."); *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336 (Fed. Cir. 2009) (internal quotation marks omitted) ("[E]vidence of copying is of no import on the question of whether the claims of an issued patent are infringed, either literally or by equivalents."). It would also prejudice Defendants by branding them as bad actors. *See Eolas Technologies, Inc. v. Microsoft Corp.*, 270 F.Supp. 2d 997, 1005 (N.D. Ill. 2003) (noting the

"highly prejudicial nature" of an accusation of copying).

This Court should bar IV II from arguing or suggesting that Defendants engaged in copying, in accordance with Fed. R. Evid. 402 and 403.

## XV. MIL No. 15: Preclude references to or arguments regarding the findings or outcomes of PTAB post-issuance proceedings, except that testimony and statements may be used for impeachment without identifying that they are from a PTAB post-issuance proceeding

Defendants respectfully request that this Court preclude IV II from offering testimony, evidence, or argument referencing the Patent Trial and Appeal Board's ("PTAB") decisions arising from Defendants' *Inter Partes* Review ("IPR") and Covered Business Method Review petitions and the IPR petition filed by HCC Insurance Holdings, Inc. (collectively the "PTAB post-issuance proceedings"), as well as the findings, outcomes, and appeals of the Board's decisions in those post-issuance proceedings. Those decisions are based on different legal standards than those applicable in this Court. It would be substantially unfair and unduly prejudicial as well as confusing to the jury for IV II to reference decisions or proceedings of another tribunal with a different set of standards than applies in this Court. To be clear, Defendants do not seek exclusion of otherwise admissible statements made by the parties during those post-issuance proceedings. But testimony regarding the *findings* of the PTAB and the *results* of the post-issuance proceedings is irrelevant, confusing for the jury, and unduly prejudicial, so should be excluded under Fed. R. Evid 402 and 403.

Circuit and district precedent support the exclusion of this material. *See Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed. Cir. 2009); *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015, 2017 WL 2537021, at *1 (E.D. Tex. May 30, 2017). Because of the risk of prejudice, courts have repeatedly excluded references to PTAB proceedings from presentation at trial. *See, e.g., Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-cv-654, 2016 WL

4238769, at *2 (W.D. Mich. Jan. 28, 2016); *ContentGuard v. Amazon.com*, No. 13-cv-01112-JRG, 2015 WL 12915561, at *3 (E.D. Tex. Aug. 3, 2015); *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd. et al.*, No. 2:13-cv-213-JRG-RSP, 2015 WL 627430, at *5 (E.D. Tex. Jan. 31, 2015); *Personalized Media Comms., LLC v. Zynga, Inc.*, No. 2:12-cv-00068-JRG-RSP, Dkt. 232, at 2 (E.D. Tex. Nov. 8, 2013). IV II should likewise be precluded from referencing either the post-issuance proceedings or their outcomes here.

## XVI. MIL No. 16: Preclude references to total sales, revenues, profits, and overall financial status of Defendants or any of Defendants' affiliated companies

Pursuant to Fed. R. Evid. 402 and 403, Defendants respectfully request that this Court preclude IV II from presenting any argument, evidence, or testimony concerning either Defendants' or any of their affiliated companies', including their parent company Old Republic's, (1) total sales, revenues, and profits, or (2) overall net worth or stock value.

Defendants' total sales, revenues, and profits are irrelevant to damages issues (or any other issue) and would unduly prejudice Defendants before the jury. IV II's damages expert does not use any of this information in his analysis of the value of any claimed infringement of an accused product. And while Defendants' damages expert compares each Defendant's revenues (*i.e.*, direct premiums written) to that of certain licensees of the '177 patent, he uses the resulting ratio (not the actual revenue numbers) to calculate the implied values of those licenses to Defendants. *See, e.g.*, Ex. 8, Rebuttal Expert Report Regarding Damages, ¶¶241-246 (performing a relative size adjustment on license amounts); Ex. 9, Supplemental Expert Report Regarding Damages, ¶¶15-23 (same). Accordingly, while the ***relative*** size of Defendants as compared to certain '177 patent licensees may be relevant to damages, the Defendants' total sales, revenues, and profits are irrelevant and should be excluded pursuant to Fed. R. Evid. 402. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d. 51, 67-68 (Fed. Cir. 2012)

("Admission of such overall revenues . . . only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is adequate to compensate for the infringement.") (quotation marks omitted).

Likewise, evidence concerning Defendants' overall net worth and stock value is even further removed from the value of any claimed infringement of an accused product, and should also be excluded pursuant to Fed. R. Evid. 402. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (such disclosure "cannot help but skew the damages horizon for the jury"). Any supposed probative value of such financial data (there is none) is substantially outweighed by the unfair prejudice Defendants would suffer if IV II were allowed to inform the jury of Defendants' overall revenue, income, profitability, net worth, or stock value. This Court has routinely excluded such evidence. *See, e.g.*, *Rembrandt Wireless Techs.*, , 2015 WL 627430, at *5 (granting motion to "exclude evidence of Samsung's size, wealth, total revenues or profits"); *MobileMedia Ideas, LLC v. HTC Corp.*, No. 2:10-cv-112-JRG, 2013 WL 12158524, at *3 (E.D. Tex. Apr. 24, 2013) (excluding references to defendant's "total revenue or operating profits").

The financial information of any company affiliated with Defendants, including their parent company Old Republic, is still further removed from any issues in this case as none of the affiliated companies is a named defendant in this case. Accordingly, any such information should be excluded under Fed. R. Evid. 402.

These categories of evidence could easily mislead jurors into thinking that Defendants' or their affiliated companies' overall financial status is relevant to any damages claim, or could cause the jury to find infringement and/or award damages on an improper basis, such as to redistribute wealth or punish Defendants for their financial success. Moreover, if IV II is allowed

to present such evidence or argument, Defendants will be forced to rebut it with multiple financial witnesses from each company to provide context for the information, as well as expert testimony and argument to explain why it should not affect any recovery. Such an exercise would distract from the true merits of the case and should be excluded under Fed. R. Evid. 403.

## XVII.  MIL No. 17: Preclude references to BITCO, including the outcome of the BITCO trial, in the Great West trial, and vice versa

Pursuant to Fed. R. Evid. 402 and 403, Defendants respectfully request that this Court preclude IV II from presenting (1) in the BITCO trial, any argument, evidence, or testimony concerning Great West, including the outcome of any issues presented at the Great West trial, and (2) in the Great West trial, any argument evidence, or testimony concerning BITCO, including the outcome of any issues presented at the BITCO trial, including publishing the consolidated case caption. *E.g.*, *SimpleAir, Inc. v. Google, Inc.*, No. 2:11-cv-416-JRG, Dkt. 693 at 6 (E.D. Tex. Mar. 12, 2014) (barring evidence concerning defendants not present at trial). BITCO and Great West are different defendants with different accused products in separate cases that were consolidated for pre-trial issues only. Dkt. 172. Because BITCO's information is not relevant to any infringement, invalidity, or damages issues in the Great West case, and Great West's information is likewise not relevant to any infringement, invalidity, or damages issues in the BITCO case, all such information should be excluded under Fed. R. Evid. 402. Similarly, the ultimate outcome of any issues as to BITCO has no bearing on the issues in the Great West case, and vice versa. *MobileMedia Ideas,* 2013 WL 12158524, at *2 (excluding references to "verdicts in other lawsuits").

Allowing evidence about BITCO in the Great West trial and about Great West in the BITCO trial could easily mislead and confuse the jurors. For example, jurors may incorrectly think that one company's accused product is relevant to whether the other company's product

infringes and/or that one company's information (*e.g.*, usage of accused product) is relevant to IV II's damages claim for the other company, when in fact the two defendants have different systems entirely. As another example, if the first jury finds infringement and awards damages against one company, knowing that information may mislead the second jury into thinking that information is relevant to IV II's infringement and damages claims against the other company, and could even inappropriately influence the second jury's decision on those issues. Thus, the inclusion of such information would be highly prejudicial to the true merits of Defendants' individual cases and should be excluded under Fed R. Evid. 403.

## XVIII. MIL No. 18: Preclude references to the licenses and information therein that are undisputedly not relevant to the damages analysis

Pursuant to Fed. R. Evid. 402 and 403, Defendants respectfully request that this Court preclude IV II from presenting any argument, evidence, or testimony concerning any licenses produced by IV II, including information therein (*e.g.*, licensee's names, license amounts), that the parties' experts agree are not relevant to their damages analysis. For example, IV II's damages expert concluded that "IV's licenses produced in this matter do not provide indicators probative of a reasonable royalty for the '177 Patent." Ex. 10, Expert Report of Michael J. Lasinski relating to Great West, at 34-35; Ex. 11, Expert Report of Michael J. Lasinski relating to BITCO, at 35-36. With the exception of ███████████████████████████ ██████████████████████████████████ Defendants' expert agreed that other licenses produced by IV II are not comparable to the hypothetical license. *See* Ex. 8, Rebuttal Expert Report Regarding Damages, ¶¶222, 238-239 (discussing relevance of license to ██████████████████ Ex. 9, Supplemental Expert Report Regarding Damages, ¶¶3, 12-13 (discuss relevance of ██████████████████████ Accordingly, because the parties' experts agree that—other than ███████████████████████████████████

licenses produced by IV II are not relevant to the damages issue in this case, they should be excluded under Fed. R. Evid. 402. Allowing IV II to present such evidence could easily mislead and confuse the jurors into thinking that they are probative to IV II's damages claims against the Defendants and should also be excluded under Fed. R. Evid. 403.

## XIX. MIL No. 19:  Preclude commentary about the absence of potential witnesses over whom a party has no control without leave of Court

The Court should preclude commentary on the absence of a potential witness over whom a party has no control, absent leave of Court. *See SimpleAir, Inc. v. Google, Inc.*, No. 2:11-cv-416-JRG, Dkt. 693 at 6 (E.D. Tex. Mar. 12, 2014). Such commentary is irrelevant and unfairly prejudicial. Fed. R. Evid. 402, 403.

## XX. MIL No. 20:  Preclude argument or evidence by Plaintiff about entities that are not Plaintiff

The only Plaintiff in this case is Intellectual Ventures II LLC.  Accordingly, to the extent Plaintiff discusses its background and activities, that evidence and argument should be limited to information about the Plaintiff—Intellectual Ventures II LLC. The Court should preclude Plaintiff from discussing, offering evidence, or eliciting testimony about "Intellectual Ventures" in a manner that includes entities who are not the Plaintiff, or patent funds or activities of other "Intellectual Ventures" entities who are not the Plaintiff.  Otherwise, the jury will be presented with irrelevant and confusing information about a conglomerate of entities cast under the name of "Intellectual Ventures," or going by other names entirely, who are not the Plaintiff or parties. Fed. R. Evid. 402, 403.

This motion is not intended to preclude a party from identifying patents encompassed in licenses at issue in the damages case, nor from offering evidence on the history of the ownership of the '177 patent.

Dated: January 23, 2019

Respectfully submitted,

/s/ Irene Yang

**Harry Lee Gillam, Jr.**
Texas State Bar No. 07921800
gil@gillamsmithlaw.com
Gillam & Smith, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**Vernon M. Winters**
California State Bar No. 130128
(Admitted to the E.D. Tex. Bar)
vwinters@sidley.com
**Irene Yang**
California State Bar No. 245464
(Admitted to the E.D. Tex. Bar)
irene.yang@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

**Sharon Lee**
(admitted pro hac vice)
sharon.lee@sidley.com
**Samuel A. Dillon**
(admitted pro hac vice)
samuel.dillon@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

**Andrew T. Langford**
Texas State Bar No. 24087886
alangford@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Counsel for Defendants and
Counterclaimants, BITCO General
Insurance Corp., f/k/a, Bituminous Casualty
Corp.; BITCO National Insurance Co., f/k/a
Bituminous Fire and Marine Insurance Co;
and Great West Casualty Company*

████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record have been served with the foregoing document by electronic mail on this 23rd day of January, 2019.

*/s/ Irene Yang*
Irene Yang

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that this document is filed under seal pursuant to the Protective Order (Dkt. No. 59) approved and entered in this case..

*/s/ Irene Yang*
Irene Yang

## CERTIFICATE OF CONFERENCE

I hereby certify that the parties met and conferred with respect to these motions *in limine* as required by Local Rule CV-7(h) via telephone on January 23, 2019. The parties' discussions ended in an impasse.

*/s/ Irene Yang*
Irene Yang