IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| INTELLECTUAL VENTURES II LLC, | § | |
| --- | --- | --- |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:18-CV-00298-JRG |
| | § | (LEAD CASE) |
| BITCO GENERAL INSURANCE | § | |
| CORPORATION F/K/A BITUMINOUS | § | |
| CASUALTY CORPORATION, ET AL., | § | |
| | § | |
| *Defendants*. | § | |

| INTELLECTUAL VENTURES II LLC, | § | |
| --- | --- | --- |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:18-CV-00299-JRG |
| | § | |
| GREAT WEST CASUALTY COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM AND OPINION ORDER**

Before the Court is Defendants BITCO General Insurance Corp., f/k/a Bituminous Casualty Corp.; BITCO National Casualty Co., f/k/a Bituminous Fire and Marine Insurance Co.; and Great West Company's (collectively, "Defendants") Motion for Supplemental Claim Construction (the "Motion"). (Dkt. No. 256.[1]) Also before the Court is Plaintiff Intellectual Ventures II LLC's ("IV" or "Plaintiff") Motion in Limine No. 12 ("MIL No. 12"). (Dkt. No. 234 at 6–7.) Having considered the Defendants' and Plaintiff's (collectively, the "Parties") respective

---

[1] Unless otherwise indicated, all docket citations herein refer to documents filed in *Intellectual Ventures II LLC v. BITCO Gen. Ins Corp.*, Civ. No. 6:18-cv-298 (E.D. Tex.).

arguments and for the reasons and to the extent discussed herein, the Court is of the opinion that the Motion should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART** and MIL No. 12 should be and hereby is **DENIED AS MOOT**.

I. **BACKGROUND**

Plaintiff sued Defendants for infringement of U.S. Patent No. 7,516,177 (the "'177 Patent"). *See* Case No. 6:18-cv-298, Dkt. No. 1 (originally filed as *Intellectual Ventures II LLC v. BITCO Gen. Ins Corp.*, Civ. No. 6:15-cv-59 (E.D. Tex.)); 6:18-cv-299, Dkt. No. 1 (originally filed as *Intellectual Ventures II LLC v. Great W. Cas. Co.*, 6:15-cv-60 (E.D. Tex.).) The cases were consolidated for pretrial purposes with Case No. 6:15-cv-59 as the lead case. (*See* Dkt. No. 33.) Claim 14 of the '177 Patent—the only asserted claim in the above-styled cases—recites: "[t]he apparatus of [C]laim 11 wherein the centralized access point is further operative to enable a user to manage any content contributed by them." '177 Patent at 55:35–37. The Parties dispute the meaning of the phrase "manage any content," and in particular the term "any." (*See* Dkt. 256 at 1; Dkt. No. 234 at 6–7.)

On January 11, 2016, the Court construed disputed terms of the '177 Patent. (*See generally* Dkt. No. 116 (Claim Construction Order).) The Parties did not dispute the construction of "manage any content," and thus the phrase was afforded its plain and ordinary meaning. (*See generally id.*) However, the Court subsequently stayed Plaintiff's originally filed cases[2] in view of the Patent Trial and Appeal Board ("PTAB") instituting *inter partes* review on the '177 Patent. (Dkt. No. 150.) After the PTAB determined that Claim 14 was patentable under 35 U.S.C § 103 (*see* Dkt. No. 183-7 (*Oracle Am. Inc. v. Intellectual Ventures II LLC*, IPR2016-01434, Paper No. 52, at 33–34 & n.15, 39, 41 (PTAB Jan. 8, 2018))), the Court lifted the stay as to Claim 14 and severed the

---

[2] *Intellectual Ventures II LLC v. BITCO Gen. Ins Corp.*, Civ. No. 6:15-cv-59 (E.D. Tex.) and *Intellectual Ventures II LLC v. Great W. Cas. Co.*, 6:15-cv-60 (E.D. Tex.).

Parties' claims pertaining to Claim 14 from Case Nos. 6:15-cv-59 and 6:15-cv-60 into Case Nos. 6:18-cv-298 and 6:18-cv-299, respectively (Dkt. No. 166).

Thereafter, the Court amended its trial schedule on four separate occasions in response to joint requests by the Parties. (*See* Dkt. Nos. 174, 175, 187, 188, 193, 197, 218, 219.) In compliance with the Court's trial schedule, the Parties exchanged expert reports in October of 2018 and filed dispositive motions in December of 2018. (*See* Dkt. No. 195 (IV's Expert Report Notice); Dkt. No. 196 (Defendants' Expert Report Notice); Dkt. Nos. 206, 207, 208, 209 (motions for summary judgment and to strike).)

On January 19, 2019, a claim construction order in a related case construed the phrase "manage any content" in Claim 14 of the '177 Patent to mean "manage all stored content." (*Intellectual Ventures II LLC v. Kemper Corp.*, No. 6:16-cv-81, Dkt. No. 22 (Jan. 31, 2019) [*hereinafter Kemper*].) In apparent response thereto, IV filed MIL No. 12 on January 23, 2019, seeking to "[e]xclude evidence or argument relating to any untimely claim construction arguments and arguments that conflict with or are outside the Court's claim construction order. . . . Specifically, Defendants' expert has opined that the word 'any' in [C]laim 14 of the Patent-in-Suit requires a user to be able to manage all content contributed at all times." (Dkt. No. 234 at 6–7.) Five days before a scheduled pretrial conference and on the very eve of trial, Defendants filed the Motion, asking the Court to adopt the construction in *Kemper* of the phrase "manage any content" as meaning "manage all stored content." (*Id.* at 256 at 1, 4.)

## II. DISCUSSION

Defendants argue that the construction of the phrase "manage any content" in *Kemper* is supported by the intrinsic record and indicates that IV's proffered plain and ordinary meaning for "manage any content" is erroneous as a matter of law. (Dkt. No. 256 at 3–4.) Although MIL No.

12 seeks to preclude any interpretation of "any" other than Plaintiff's proffered meaning, Defendants argue that their technical expert (Dr. Crovella) has provided opinions on the plain and ordinary meaning of "manage any content" that are consistent with the construction in *Kemper*. (*Id.* at 2.) Since IV had a "full and fair opportunity to contest" the meaning of the phrase "manage any content" in *Kemper*, Defendants contend that the plain meaning of the claim language to those skilled in the art is that all content contributed by the user is manageable. (*Id.* at 3–4.)

IV argues that "any" means "one or some indiscriminately of whatever kind." (Dkt. No. 270 at 1.) IV argues that "Defendants' request for the Court to construe the term 'manage any content,' which comes on the eve of trial, is untimely," and "result[s] in waiver." (*Id.* at 1, 3.) "Defendants' belief that the opinions of . . . Dr. Crovella[] are consistent with [*Kemper*] . . . . is an admission that Defendants had in their possession all the information needed to recognize the parties' differing positions on the term 'any' at least by the time of expert disclosures (October 10, 201[8]), but nonetheless waited to raise the issue on February 7, 2019." (*Id.* at 3.) Additionally, IV argues that it objected to the construction in *Kemper* pursuant to Local Rule CV-72(b) based on the '177 Patent's specification. (*Id.* at 1 n.2 (citing (Dkt. No. 137) (objecting to a magistrate judge's order on a non-dispositive matter)).) Specifically, IV argues that the '177 Patent discloses processes involving stored, contributed content that are "incapable of management by the contributor" (e.g., non-editable portions of contributed content). (Dkt. No. 270 at 4–6 (citing '177 Patent at 47:31–36, 47:56–61).)

As an initial matter, the Court finds, without doubt, that neither Defendants nor Plaintiff have been diligent in bringing this alleged claim construction dispute to the Court. The Parties have had the clear benefit of the Court's Claim Construction Order for at least three years. (*See* Dkt. No. 116.) Even in view of guidance afforded by the PTAB's determination that Claim 14

4

was patentable, the Parties' multiple joint motions to amend the Court's trial schedule never once identified the need for supplemental claim construction. (*See* Dkt. Nos. 174, 187, 193, 218.) The Parties could have and should have identified any alleged dispute regarding the term "any" months ago (at least as early as when the Parties exchanged expert reports). (*See* Dkt. No. 195; Dkt. No. 196.) Additionally, neither party filed any motions for summary judgment contesting the meaning of "any" offered by the other's expert. For all intents and purposes, until the order in Kemper was issued, the Parties each appeared content to proceed to trial on their competing expert opinions as to the plain and ordinary meaning of "any." (*See* Dkt. No. 248 (Defendants' Response to MIL No. 12) ("IV II's request . . . would preclude Defendants from responding to IV II's technical expert's understanding and application of the plain and ordinary meaning of this claim term.").) To restate the obvious, neither party has been diligent in this regard.

"[D]istrict courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims." *O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Indeed, where a court has prescribed specific claim construction procedures and the parties have proceeded towards trial in reliance thereon, the court has discretion to "preclude parties from injecting 'new claim construction theories on the eve of trial.'" *See Battcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 640–41 (Fed. Cir. 2011); *but see Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008) ("litigants waive their right to present new claim construction disputes if they are raised for the first time after trial."). Nonetheless, the Court exercises its discretion to clarify the meaning of "any."

The Court declines to adopt either of the Parties' positions as overbroad.[3] The specification for the '177 Patent states:

---

[3] The Court notes that the claim construction order in *Kemper*—still subject to a timely objection—is not binding on this Court.

> Once a user has volunteered to be a contributor to Applicants web site, and the contribution has been approved by the staff at Applicants web site, a contributor can access their contributions page by way of their personal web page 1198 via link 204.
>
> If a user wants to **manage a content contribution**, the user accesses their contributions by selecting link 204. Individual content object links such as link 254 are displayed within box 212. Additionally, further details of each content object can be obtained by selecting an associated "more" link 486 that opens a new screen display (not shown) containing more information about the content object.

'177 Patent at 46:4–14 (emphasis added). Although "a user can visually identify a listing of all content contributions that they have made" (i.e., a list of content contributed by the user that can be "managed"), "[a] user can *select a single, specific contribution which they desire to manage* by simply clicking on link 492." *Id.* at 54–55 (emphasis added). As such, those skilled in the art would understand that a user may individually manage each contributed content (i.e., one at a time).

That said, the specification also discloses an embodiment where specific content that has been contributed by a user may not be managed. Specifically, "[w]hen a contributor wishes to manage a contribution that takes the form of a link, or any other type of content object, save for a tutorial, the user uses a page such as page 504 in FIG. 43." *Id.* at 27–30.



*Id.* at Figure 43. However, "[a]t this stage in the work flow process, a contributor *can only modify their profile and the link to the content object*," because "Applicant's web site and staff maintain control over the other elements which are displayed in *non-editable form on page 504*." *Id.* at 47:56–60 (emphasis added).

Since the specification indicates that a user-contributor would not be able to manage the "Content Title - How to Clear a Clogged Drain" or the "Content Description - Tips and Directions on Cleaning a Clogged Drain," as illustrated above,[4] the intrinsic evidence does not indicate that

---

[4] This example comports with the PTAB's determination:
> "what is a wireless LAN?" 224, 232 [illustrated in Figures 9 and 10 of the '177 Patent] is actually two separate components: (1) the underlying technical set of computer instructions that, upon clicking the link associated with "what is a wireless LAN?" 232, transports a user to a web page associated with "what is a wireless LAN?" 232; and (2) the words "what is a wireless LAN?" 224 itself displayed on the computer display, but separate from the technical set of computer instructions set forth in (1).

(Dkt. No. 183-7 at 10.) As such, "component (2) of 'what is a wireless LAN?' 224 is 'content,' as it is clearly 'electronic data embodying information for an individual or individuals,' in that the words 'what is a wireless LAN?' are intended to convey information to an individual." (*Id.*) Likewise, "How to Clear a Clogged Drain" and "Tips and Directions on Cleaning a Clogged Drain," illustrated above, are clearly "electronic data embodying information for an individual or individuals," in that this title and description are intended to convey information to an individual.

"any" means that a user must always be able to manage "all" contributed content. (*Cf.* Dkt. No. 256 at 3–4.) Thus, read in the context of the Claim 14 and the '177 Patent's specification, the term "manage any content" indicates that a user must be able to "manage one or more stored content."[5]

Based on the foregoing, the Court construes "**manage any content**" to mean "**manage one or more stored content**." By construing "any" to mean "one or more," the Court does not preclude "any" from encompassing "all."

### III. CONCLUSION

The Court adopts the constructions set forth in this opinion for phrase "manage any content" in Claim 14 of the '177 Patent. The Parties are **ORDERED** that they may not refer, directly or indirectly, from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction is limited to informing the jury of the precise definitions adopted by the Court.

Accordingly, Defendants' Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**. Additionally, Plaintiff's MIL No. 12 is **DENIED AS MOOT**.

**So ORDERED and SIGNED this 28th day of February, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[5] The Court is persuaded by the indefiniteness analysis in *Kemper* that "the specification indicates that contributed content is stored on a server" and thus "it is objectively discernable whether content has been 'contributed' (i.e., 'provided so it is accessible by at least one user other than the contributor')." (*Kemper*, No. 6:16-cv-81, Dkt. No. 134 at 16–17, 20 (citing '177 Patent at 46:15–16, 28–30); *see also id.* 14–22.)